Approved: _____
Jane Y. Chong
Assistant United States Attorney

Before:  THE HONORABLE DEBRA C. FREEMAN
         United States Magistrate Judge
         Southern District of New York

**22 MAG 1290**

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - v. -

JEFFREY SOBERMAN PARKET,

              Defendant.

- - - - - - - - - - - - - - - - - - X

**SEALED COMPLAINT**

Violation of
18 U.S.C. §§ 1341, 1343, 1344, 1028A, and 2

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

    MARK RIZZO, being duly sworn, deposes and says that he is a Postal Inspector with the United States Postal Inspection Service, and charges as follows:

### COUNT ONE
(Wire Fraud)

    1. From at least in or about November 2016 up to and including in or about November 2021, in the Southern District of New York and elsewhere, JEFFREY SOBERMAN PARKET, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, PARKET sought and obtained more than $50 million in loans from at least two dozen individual and institutional lenders by means of false and fraudulent pretenses, representations, and documents, including falsified bank and brokerage statements, and in furtherance of the scheme transmitted and caused to be transmitted into and out of the Southern District of New York interstate emails, telephone calls, and wire transfers of funds.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT TWO
(Mail fraud)

2.   In or about November 2020, in the Southern District of New York and elsewhere, JEFFREY SOBERMAN PARKET, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, did place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and did take and receive therefrom, such matters and things, and did cause to be delivered by mail and such carriers, according to the directions thereon, and at the places at which they were directed to be delivered by the person to whom they were addressed, such matters and things, to wit, PARKET transmitted by United States mail fraudulent documents reflecting fake assets and thereby induced a lender to transfer millions of dollars in loans into his accounts.

(Title 18, United States Code, Sections 1341 and 2.)

## COUNT THREE
(Bank fraud)

3.   In or about June 2020, in the Southern District of New York and elsewhere, JEFFREY SOBERMAN PARKET, the defendant, willfully and knowingly did execute and attempt to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation ("FDIC"), and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, PARKET obtained loans from an FDIC-insured bank by means of false and fraudulent pretenses, representations, and documents.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT FOUR
(Aggravated Identity Theft)

4.   From at least in or about October 2018 up to and including at least in or about November 2021, in the Southern District of New York and elsewhere, JEFFREY SOBERMAN PARKET, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, PARKET possessed, used, and transferred the personal identification information of a purported business associate ("Associate-1") to obtain loans in connection with the wire fraud scheme charged in Count One of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

## COUNT FIVE
(Aggravated Identity Theft)

5.   From at least in or about March 2020 up to and including in or about November 2021, in the Southern District of New York and elsewhere, JEFFREY SOBERMAN PARKET, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, PARKET possessed, used, and transferred the personal identification information of a second purported business associate ("Associate-2") in connection with the wire fraud scheme charged in Count One of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

## COUNT SIX
(Aggravated Identity Theft)

6.   From at least in or about March 2020 up to and including in or about November 2021, in the Southern District of New York and elsewhere, JEFFREY SOBERMAN PARKET, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, PARKET possessed, used, and transferred the personal identification information of

a third purported business associate ("Associate-3") in connection with the wire fraud scheme charged in Count One of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

7. I am a Postal Inspector with the United States Postal Service. This affidavit is based upon my personal participation in the investigation of this matter, my interviews of witnesses, and my examination of financial records and other documents. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

Overview of the Scheme

8. As described in further detail below, my investigation to date has revealed that from at least in or about November 2016 through in or about November 2021, JEFFREY SOBERMAN PARKET, the defendant, perpetrated a scheme to fraudulently obtain more than $50 million in loans from more than two dozen individual and institutional lenders (the "Lenders") residing in at least five states, resulting in approximately $40 million in losses to the Lenders. PARKET, a former bond trader and former principal of several hedge funds, falsely represented to most of the Lenders that he needed short-term liquidity for investment opportunities or real estate purchases. PARKET falsely represented to the remaining Lenders that he would invest their funds and repay them with interest or in the form of regular distributions. In fact, he sought the loans to pay off debts he had incurred through day trading and to pay off earlier loans. To secure the loans and to prove his ability to quickly repay them, PARKET pledged a variety of fake assets to the Lenders and falsely represented to the Lenders — through emails, documents, phone conversations, and in-person meetings — his purportedly significant net worth and his purported ownership interests in valuable investment accounts.

4

The Investigation

9. Based on my discussions with the Lenders, bank employees, and other individuals and my review of bank records, I know the following:

    a. The Lenders are individuals and companies residing in New York, Florida, Minnesota, Utah, and South Carolina.

    b. Beginning at least in or about January 2018, JEFFREY SOBERMAN PARKET, the defendant, fraudulently obtained millions of dollars from the Lenders by misrepresenting his assets and falsely claiming that he needed short-term liquidity to pursue specific investment opportunities and to purchase real estate in Manhattan.

    c. To maintain the scheme, PARKET paid off earlier loans with money procured through later loans. Beginning in the fall of 2018, PARKET accelerated his borrowing, obtaining over $50 million in loans between in or about October 2018 through in or about November 2021.

    d. As part of the scheme, PARKET entered into loan agreements with the Lenders and, to either prove his ability to repay the loans or to collateralize the loans, he provided the Lenders fake bank and brokerage statements, as well as elaborate documentation that purportedly reflected his ownership of significant assets and interests in various investment accounts. In furtherance of these false representations, PARKET placed fake documents in the mail and sent at least one Lender a United States Postal Service receipt confirming the mailing.

10. Based on my review of the documents governing the loans made by the Lenders to JEFFREY SOBERMAN PARKET, the defendant, emails exchanged between the Lenders and PARKET, and bank records, I know the following:

    a. PARKET falsely represented to the Lenders that he owned, among other things, valuable membership interests in two funds. As collateral for the loans he obtained, he provided the Lenders fake letters purportedly signed by a fund manager, Associate-1, and which arranged for the Lenders to be assigned PARKET's purported interests in the funds and any proceeds derived from the redemption of those interests in the event that PARKET defaulted on the loans.

    b. PARKET also falsely represented to the Lenders that he owned shares in a company ("Company-1") that was being

5

acquired by a venture capital firm ("Company-2") and promised that the Lenders would be repaid when the acquisition closed. To support his story, PARKET provided the Lenders, among other things, (i) fake notices of assignment and irrevocable payment instructions purportedly signed by PARKET's business associates at Company-1 and Company-2, Associate-2 and Associate-3, and (ii) fake emails sent from email addresses that he created for Associate-2 and Associate-3 confirming restrictions on PARKET's ability to sell or transfer the Company-1 shares, except in connection with Company-2's acquisition, and the measures that would be taken regarding PARKET's purported interest in Company-1 to protect the Lenders in the event that PARKET defaulted on the loans.

   c.   In some instances, PARKET paid down loans fraudulently obtained from certain Lenders and thereby induced additional loans from other Lenders with knowledge of the repayments. For instance:

      i.   From in or about September 2019 through in or about October 2020, PARKET induced an investment firm ("Investment Firm-1") to issue PARKET collateralized loans totaling more than $1.5 million.  In or about December 2020, PARKET paid down the loans.  In or about May 2021 and in or about August 2021, communicating through Investment Firm-1, PARKET induced an insurance company to issue PARKET a collateralized loan of $3 million.

      ii.   In or about June 2020, PARKET induced a bank ("Bank-1"), the deposits of which were then insured by the FDIC, to issue PARKET a collateralized loan of approximately $8 million.  In or about June 2021, PARKET paid down the loan.  In or about November 2021, PARKET induced an investment firm wholly owned by an individual with majority ownership of Bank-1 to issue PARKET a collateralized loan of approximately $4 million.

   d.   To prevent the scheme from collapsing when certain loans came due, PARKET employed a number of tactics, including (i) inducing existing lenders to extend the maturity date of the loans or to provide him millions of dollars in additional loans by falsely representing, among other things, that the acquisition of Company-1 had been delayed, and (ii) modifying and recycling fake bank and brokerage statements and other documents to induce loans from new lenders, including close friends and acquaintances.

   e.   From at least in or about November 2016 through in or about November 2021, PARKET also induced family members to

6

transfer funds to his accounts by falsely promising to invest their life savings on their behalf and pay them regular distributions.  PARKET styled the transactions as loans and pledged all his assets as collateral, including his purported Company-1 shares.  PARKET used the funds he received to repay other Lenders.

       f.  In sum, PARKET used fraudulent representations and fake assets to obtain more than $50 million in loans from more than two dozen Lenders. To date, at least 17 Lenders have provided PARKET approximately $40 million in loans that have not been repaid.

       g.  In or about December 2021, PARKET emailed a number of the Lenders, stating that he had "hurt people," that he "h[ad] no excuses and d[id] not ask for forgiveness," and that he would "own up to everything I have done."

   11.  Based on my review of fraudulent documents created by JEFFREY SOBERMAN PARKET, the defendant, including emails, bank statements, and wire transfers, I am aware of the following:

       a.  Numerous payments and communications between PARKET and the Lenders passed through the Southern District of New York.

       b.  For example, on PARKET's instruction, most of the Lenders wired funds to his personal accounts, including a savings account, checking account, and brokerage account at banks in Manhattan.  Based on public database searches and my conversations with witnesses, I know that PARKET also resided in and was located in Manhattan for most of the duration of the offenses, and that as part of the scheme PARKET communicated with Lenders residing in at least four other states through phone calls and emails.

13. WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of JEFFREY SOBERMAN PARKET, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

s/Mark Rizzo, by the Court, with permission
_____
Postal Inspector Mark Rizzo
United States Postal Inspection Service

Sworn to before me by reliable
electronic means pursuant to
Fed. R. Cr. P. 41(d)(3) and 4.1 this
__8th__ day of February, 2022
                                        (FaceTime)

_____
THE HONORABLE DEBRA C. FREEMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK