1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4                    v.                          22 Cr. 311 (MKV)

5    JEFFREY SOBERMAN PARKET,

6                    Defendant.
                                                 Plea
7    ------------------------------x

8                                                New York, N.Y.
                                                 February 15, 2023
9                                                11:15 a.m.

10   Before:

11

12                       HON. MARY KAY VYSKOCIL,

13                                               District Judge

14                             APPEARANCES

15   DAMIAN WILLIAMS
          United States Attorney for the
16        Southern District of New York
     BY:  JANE CHONG
17        Assistant United States Attorney

18   DAVID PATTON
     FEDERAL DEFENDERS OF NEW YORK
19        Attorneys for Defendant
     BY:  AMY GALLICCHIO
20        LISA E. RAHDERT

21

22

23

24

25

1           (Case called)

2           THE DEPUTY CLERK:  Good afternoon counsel starting

3    with the government, please state your name for the record.

4           MS. CHONG:  Good afternoon, your Honor.  AUSA Jane

5    Chong for the government, and I'm joined by Postal Inspector

6    Mark Rizzo.

7           THE COURT:  Good afternoon, Ms. Chong and Inspector

8    Rizzo.

9           MS. GALLICCHIO:  Good afternoon, your Honor.  The

10   Federal Defenders by Amy Gallicchio and Lisa Rahdert on behalf

11   of Mr. Parket.

12          THE COURT:  Good afternoon to you both Ms. Gallicchio

13   and Ms. Rahdert.  And good afternoon to you, Mr. Parket.  Good

14   afternoon to our court reporter.  Thank you very much for being

15   here.

16          So we are here today for a change-of-plea hearing for

17   Mr. Parket.

18          Let me just clarify for the record, sir, you speak and

19   understand English clearly?

20          THE DEFENDANT:  Yes, I do.

21          THE COURT:  You do not need the services of an

22   interpreter?

23          THE DEFENDANT:  No, I do not.

24          THE COURT:  Are there victims entitled to notice

25   understand the Crime Victims' Act?

1          MS. CHONG:  Yes, your Honor.  And a number of them are

2     present in the courtroom today.

3          THE COURT:  Welcome to all of you then.

4          And notice has been given to everyone entitled.

5          MS. CHONG:  Yes, your Honor.

6          THE COURT:  So on June 2 of 2022, Mr. Parket appeared

7     before this Court for arraignment.  He waived indictment and

8     pled not guilty to the information in this action which is

9     filed on ECF number 12.  That information charges four counts

10    and includes forfeiture and substitute forfeiture allegations.

11    Trial in this case was scheduled for March 14.

12         I'm now informed that the defendant has an application

13    to withdraw his plea of not guilty and pursuant to a plea

14    agreement with the government, enter a plea of guilty to Count

15    One and Count Three of the information.

16         Count One charges the defendant with wire fraud in

17    violation of Title 18 U.S. Code Section 1343 and 2.  In

18    particular, the government alleges that from at least in or

19    about November of 2016, up to and including in or about

20    November of 2021, Mr. Parket willfully and knowingly, having

21    devised and intending to devise a scheme and artifice to

22    defraud and for obtaining money and property by means of false

23    and fraudulent pretenses, representations, and promises did

24    transmit and cause to be transmitted by means of wire, radio,

25    and television communications in interstate and foreign

1   commerce, writings, signs, signals, pictures, and sounds for

2   the purpose of executing such scheme and artifice, which

3   affected a financial institution; to wit, Mr. Parket sought and

4   obtained more than $50 million in loans from at least two dozen

5   individuals and institutional lenders by means of false and

6   fraudulent pretenses, representations, and documents, including

7   falsified bank and brokerage statements and, in furtherance of

8   the scheme, transmitted and caused to be transmitted into and

9   out of the Southern District of New York interstate emails,

10  telephone calls, and wire transfers of funds.

11          Count Three charges the defendant with bank fraud in

12  violation of Title 18 U.S. Code Section 1344 and 2.  In

13  particular, the government alleges that in or about June of

14  2020, in the Southern District of New York and elsewhere,

15  Mr. Parket willfully and knowingly did execute and attempt to

16  execute a scheme and artifice to defraud a financial

17  institution, the deposits of which were then insured by the

18  Federal Deposit Insurance Corporation, known as the FDIC, and

19  to obtain money, funds, credit, assets, securities, and other

20  property owned by and under the custody and control of such

21  financial institutions by means of false and fraudulent

22  pretenses, representations, and promises; to wit, the defendant

23  obtained millions of dollars in loans from an FDIC insured bank

24  by means of fraudulent documents reflecting fake assets.

25          Ms. Gallicchio, is that correct and consistent with

1    yours and the defendant's understanding?

2              MS. GALLICCHIO:  Yes, it is, your Honor.

3              THE COURT:  Thank you.

4              Excuse me one minute.

5              (Pause)

6              THE COURT:  All right.  I have a copy of a plea

7    agreement between the parties.

8              Is this a final agreement at this point?

9              MS. CHONG:  Yes, your Honor.

10             THE COURT:  Ms. Gallicchio?

11             MS. GALLICCHIO:  Yes, your Honor.

12             THE COURT:  All right.  I ask because this is not the

13   first time that I've been told there was a final agreement

14   between the parties.

15             But we are now at the point where there are no issues

16   and this is final?

17             MS. CHONG:  Yes, your Honor.

18             THE COURT:  Ms. Gallicchio?

19             MS. GALLICCHIO:  Yes, your Honor.  It's final.  It's

20   signed.  We're prepared.

21             THE COURT:  So the plea agreement which has been

22   provided to the Court -- let me just put the description on the

23   record because, as I say, this is not the first version I've

24   been given -- is a letter on the letterhead of the

25   United States Department of Justice, United States Attorney for

1    the Southern District of New York.

2           It is a seven-page, single-spaced letter dated

3    January 30 of 2023, addressed to Amy Gallicchio, Esq., In re:

4    United States v. Jeffrey Soberman Parket, case 22 Cr. 311

5    (MKV).  And that agreement letter will be marked as Government

6    Exhibit 1.

7           Now, Mr. Parket, before I accept your guilty plea,

8    there are a number of questions that I need to ask you, and I

9    need for you to be under oath when I ask you those questions.

10          The reason is that I need to assure that the plea that

11   you tell me you want to enter today is a valid plea.  So I may

12   at times cover a point more than once.  I may cover matters

13   that were addressed in various forms or agreements that you may

14   have signed.  If I do that, it's because it is very important

15   that you understand what's happening today and that we have a

16   very clear record that you understand what you're doing today.

17          So if at any point you don't understand something I'm

18   saying or something that I'm asking you, I would request that

19   you please tell me that.  And I'll pause.  You can speak to

20   your counsel at that point, or I will try to clarify the

21   question.

22          All right.  Will you do that, sir?

23          THE DEFENDANT:  Yes.

24          THE COURT:  All right.  Ms. Dempsey, would you please

25   administer the oath.

1           (Defendant sworn)

2           THE DEPUTY CLERK:  Thank you.  Please be seated.

3           THE COURT:  All right.  Sir, can you tell me, please:

4    How old are you?

5           THE DEFENDANT:  Fifty-nine.

6           THE COURT:  How far did you go in school?

7           THE DEFENDANT:  I have a graduate degree.

8           THE COURT:  In what, sir?

9           THE DEFENDANT:  An MBA, business management.

10          THE COURT:  And you've told me that you speak and

11   understand English perfectly clearly.

12          THE DEFENDANT:  Yes.

13          THE COURT:  That's your native language?

14          THE DEFENDANT:  Yes, it is.

15          THE COURT:  Are you a citizen of the United States?

16          THE DEFENDANT:  Yes, I am.

17          THE COURT:  Were you born here?  Or are you a

18   naturalized citizen?

19          THE DEFENDANT:  I was born here.

20          THE COURT:  Are you now or have you recently been

21   under the care of a medical doctor or other medical healthcare

22   professional?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Can you tell me when and for what.

25          THE DEFENDANT:  The government recently said that I --

1    in addition to the therapist that I've been working with, that

2    I need to have a psychiatrist as well.

3        THE COURT:  I'm going to ask you in a minute about any

4    mental health conditions.

5        THE DEFENDANT:  I apologize.

6        THE COURT:  That's all right.  Talk to me first about

7    any physical medical issues or treatments that you've received.

8        THE DEFENDANT:  I have physical medical issues, but I

9    have not been able to see a doctor in quite some time.

10        THE COURT:  You haven't been incarcerated; right?

11        THE DEFENDANT:  Correct.

12        THE COURT:  Does anything about this case interfere

13    with your ability to get your medical care?

14        THE DEFENDANT:  No.

15        THE COURT:  Do any of those medical conditions which

16    you tell me you have interfere with your ability to understand

17    what we're doing today?

18        THE DEFENDANT:  No.

19        THE COURT:  Do they interfere in any way with your

20    ability to enter into an informed plea in this case?

21        THE DEFENDANT:  No, they do not.

22        THE COURT:  Now let's turn to mental health

23    professionals.

24        Are you now or have you recently been under the care

25    of a mental health professional?

 1                THE DEFENDANT:  Several.

 2                THE COURT:  All right.  Can you tell me how recently

 3     and for what conditions.

 4                THE DEFENDANT:  Since I guess February of last year,

 5     February of 2022, I've been speaking to a therapist three times

 6     a week, most recently today.  More recently, I was told that I

 7     needed to speak to an additional court-ordered therapist and

 8     psychiatrist.  And that began I would say approximately three

 9     weeks ago.

10                THE COURT:  And who told you that?

11                THE DEFENDANT:  Pretrial services.

12                THE COURT:  Is that pursuant to the conditions of his

13     release?

14                MS. GALLICCHIO:  Yes.  That is one of the conditions,

15     your Honor.

16                THE COURT:  All right.  When you said,

17     "court-ordered," I was a little perplexed by that because I

18     haven't ordered anything.

19                But you understand that at the time you were released

20     when you were first presented, certain conditions were set.

21                THE DEFENDANT:  Yes.

22                THE COURT:  And this was one of the conditions that

23     was set?

24                THE DEFENDANT:  Yes.

25                THE COURT:  Okay.  Does anything about your seeing a

1  mental health professional interfere with your ability to

2  understand what we're doing here today?

3          THE DEFENDANT:  No.  It does not.

4          THE COURT:  You have been able to adequately consult

5  with counsel to receive advice, to understand that advice, and

6  to make informed judgments about how we're proceeding?

7          Is correct?

8          THE DEFENDANT:  Yes.  Correct.

9          THE COURT:  Does anything about your mental health

10  treatment that you've been undergoing as a condition of your

11  release in any way impact your ability to proceed today?

12          THE DEFENDANT:  No, it does not, your Honor.

13          THE COURT:  Okay.  Have you ever been hospitalized for

14  any mental illness?

15          THE DEFENDANT:  I was put in a clinic for about one

16  week, a one-week time.

17          THE COURT:  As part of the treatment as a condition of

18  bail?  Or this is a separate issue?

19          THE DEFENDANT:  That was prior to that.

20          THE COURT:  And when and how did that happen?

21          THE DEFENDANT:  I tried to hurt myself a little over a

22  year ago, and I was placed in a facility called Gracie Square

23  for, like I said, approximately one week.

24          THE COURT:  When you said you were "placed" there, was

25  it involuntary are you saying?

1             THE DEFENDANT:  Yes.  I guess you could say it was

2     involuntary.

3             THE COURT:  Who placed you there?

4             THE DEFENDANT:  I was first brought -- the EMT found

5     me trying to hurt myself.  And I think it was the EMT or the

6     police who found me trying to hurt myself.  They brought me to

7     I believe it was Cornell Weill hospital where I spent a night.

8     And from there, I was transferred to Gracie Square.

9             THE COURT:  Is that after you were arrested in this

10    case?

11            THE DEFENDANT:  No.

12            THE COURT:  Now, does that incident in any way impact

13    your ability to fully comprehend the charges against you, the

14    plea that you're telling me that you want to enter into, or any

15    other aspect of what we're doing today?

16            THE DEFENDANT:  No, it does not.

17            THE COURT:  Does it had in any way impede your ability

18    to understand and fully participate in today's proceeding and

19    in your defense in this case?

20            THE DEFENDANT:  No, it does not.

21            THE COURT:  Have you at any time ever been treated or

22    hospitalized for any kind of addiction, including to drugs or

23    to alcohol?

24            THE DEFENDANT:  Oh, my God, no.

25            THE COURT:  I'm sorry?

1          THE DEFENDANT:  No.

2          THE COURT:  Have you ever been addicted to drugs or

3     alcohol, even if you weren't hospitalized or treated for it?

4          THE DEFENDANT:  I've never tried an illegal drug in my

5     life, your Honor.

6          THE COURT:  So in the past 24 hours, have you taken

7     any drugs, legal or illegal, any medicines, any pills, any kind

8     of medication whatsoever?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  What have you taken?

11         THE DEFENDANT:  Every night before I go to sleep, I

12    take a generic version of Lexapro.

13         THE COURT:  Is that a blood pressure medicine?

14         THE DEFENDANT:  It's something that the psychiatrist

15    and therapist decided I needed, more for my mind.

16         THE COURT:  To help you sleep?

17         THE DEFENDANT:  No.  It's not to help me sleep.  I

18    don't exactly know what it is because I asked the question, and

19    I never got a great answer, but I think it's more to stabilize

20    my mood.  I'm not an expert on this by any stretch.

21         THE COURT:  But you feel your mind is clear today;

22    correct?

23         THE DEFENDANT:  It's certainly clear enough to

24    understand what we're exactly doing today.  Yes.

25         THE COURT:  In the past 24 hours, have you had any

1        alcohol to drink?

2                    THE DEFENDANT:  No.

3                    THE COURT:  And your mind is clear today?

4                    THE DEFENDANT:  Yes, it is.

5                    THE COURT:  Do you feel healthy, physically well,

6        today?

7                    THE DEFENDANT:  I have issues but nothing that impacts

8        my ability to understand or to be a part of this proceeding.

9                    THE COURT:  Is there anything that so distracts you

10       that you can't concentrate on what we're doing today?

11                   THE DEFENDANT:  No.

12                   THE COURT:  Are you represented by counsel?

13                   THE DEFENDANT:  Yes.

14                   THE COURT:  Who is your counsel?

15                   THE DEFENDANT:  Amy Gallicchio to my right and Lisa

16       Rahdert to my left.

17                   THE COURT:  Are you satisfied with your counsel?

18                   THE DEFENDANT:  Yes, I am.

19                   THE COURT:  Do you need any further time to confer

20       with your counsel before we proceed?

21                   THE DEFENDANT:  No, I do not, your Honor.

22                   THE COURT:  Do you have any reservations or concerns

23       about the representation you've been given?

24                   THE DEFENDANT:  No, I do not.

25                   THE COURT:  Do either counsel have any doubt as to the

1  | defendant's competence to plead at this time?

2  |         MS. CHONG:  No, your Honor.

3  |         THE COURT:  Ms. Gallicchio?

4  |         MS. GALLICCHIO:  No, your Honor.  I don't.

5  |         THE COURT:  All right.  Thank you very much.

6  |         So, Mr. Parket, your attorney has told me that you

7  | wish to withdraw your plea of not guilty and to enter a plea of

8  | guilty to Count One and Count Three of the information in this

9  | case.

10 |         Is that in fact what you wish to do today?

11 |         THE DEFENDANT:  Yes, your Honor.

12 |         THE COURT:  You wish to plead guilty to each of those

13 | counts?  Count One and Count Three.

14 |         THE DEFENDANT:  Yes, your Honor.

15 |         THE COURT:  Have you fully discussed your case with

16 | your lawyers, including the charges to which you tell me you

17 | intend to plead guilty and any possible defenses to those

18 | charges?

19 |         THE DEFENDANT:  Yes, your Honor.

20 |         THE COURT:  Have you discussed the consequences of

21 | entering a plea of guilty?

22 |         THE DEFENDANT:  Yes, your Honor.

23 |         THE COURT:  Are you satisfied with your attorneys and

24 | their representation of you?

25 |         THE DEFENDANT:  Yes.

1          THE COURT:  On the basis of Mr. Parket's responses to

2     my questions and my observation of his personal demeanor, I do

3     find that he is fully competent to enter an informed plea at

4     this time.

5          Now, sir, before I accept any plea from you, I need to

6     ask you certain additional questions.  My questions are

7     intended to satisfy me that you wish to plead guilty because

8     you are in fact guilty and that you fully understand your

9     rights and the consequences of entering a plea of guilty.

10          I'm going to begin by describing to you certain rights

11     that you have under the Constitution and the laws of the

12     United States.  You will be giving up these rights -- you will

13     be waiving them -- if you enter a plea of guilty.

14          So please listen very carefully.  And I'll remind you

15     again if you don't understand anything that I'm saying to you

16     or anything that I'm talking to you about, please tell me that.

17     And we'll take a pause, and you can speak with your lawyers,

18     and you can ask me to rephrase what I'm saying or to clarify

19     for you.

20          Will you do that?

21          THE DEFENDANT:  Yes, I will, your Honor.

22          THE COURT:  So under the Constitution and laws of the

23     United States, you have the right to a speedy and a public

24     trial on the charges against you by a jury with respect to the

25     charges contained in the information.

```
 1                   Do you understand that?

 2                   THE DEFENDANT:  Yes, your Honor.

 3                   THE COURT:  And do you understand that you have the

 4      right to plead not guilty and to continue to plead not guilty

 5      to the charges?

 6                   THE DEFENDANT:  Yes, your Honor.

 7                   THE COURT:  Do you understand that if there were a

 8      trial, you would be presumed innocent and you would not be

 9      required to prove that you were innocent?  Instead, the

10      government would have the burden of proving you guilt by

11      competent evidence and beyond a reasonable doubt.

12                   Do you understand that?

13                   THE DEFENDANT:  Yes, your Honor.

14                   THE COURT:  Do you understand that if there were a

15      trial, a jury made up of 12 people selected from this district

16      would have to unanimously in order to find you guilty?

17                   Do you understand that?

18                   THE DEFENDANT:  Yes, I do.

19                   THE COURT:  And do you understand that if there were a

20      trial, you would be represented by an attorney at trial and at

21      all other stages of the proceedings?  And if you couldn't

22      afford one, you would have the right to have an attorney

23      provided to you free of cost.

24                   Do you understand that?

25                   THE DEFENDANT:  Yes, your Honor.
```

1          THE COURT:  Do you understand that if there were a

2     trial, you would have the right to see and to hear all of the

3     witnesses against you?  Your attorney could cross-examine those

4     witnesses.  You would have the right to have your attorney

5     object to the government's evidence and to offer evidence on

6     your behalf if you so desired.  You would have the right to

7     have witnesses required to come to court to testify in your

8     defense.  And you personally would have the right to testify,

9     but you would not be required to testify.

10          Do you understand all of that?

11          THE DEFENDANT:  Yes, I do.

12          THE COURT:  And do you understand that if there were a

13     trial and you decided not to testify, no adverse inference

14     could be drawn against you based on your decision not to

15     testify?

16          And by that I mean the jury would be instructed that

17     it could not assume that you were not testifying because you

18     were guilty or because you had something to hide.

19          Do you understand that?

20          THE DEFENDANT:  Yes, I do.

21          THE COURT:  Do you understand that if you were

22     convicted at trial, you would have the right to appeal the jury

23     verdict?

24          THE DEFENDANT:  Yes, I do.

25          THE COURT:  Do you understand each and every one of

 1    these rights that I've just outlined for you?

 2              THE DEFENDANT:  I do, your Honor.

 3              THE COURT:  Do you have any questions about these

 4    rights?

 5              THE DEFENDANT:  No, I do not.

 6              THE COURT:  Do you understand that by entering a plea

 7    of guilty today, you will be giving up each and every one of

 8    these rights?  You will be waiving your rights.

 9              Do you understand that?

10              THE DEFENDANT:  Yes, I do.

11              THE COURT:  And do you also understand that you'll be

12    waiving any possible claim that your constitutional rights were

13    violated and you will not have a trial?

14              Do you understand that?

15              THE DEFENDANT:  Yes, I do, your Honor.

16              THE COURT:  Do you understand that by entering a plea

17    of guilty, you will also have to give up your right not to

18    incriminate yourself because I will ask you questions about

19    what you did in order to satisfy myself that you are guilty as

20    charged and you will have to admit and acknowledge your guilt?

21              Do you understand that?

22              THE DEFENDANT:  I do, your Honor.

23              THE COURT:  Do you understand that you can change your

24    mind right now and refuse to enter a plea of guilty?

25              THE DEFENDANT:  Yes.  I understand.

1          THE COURT:  Do you understand that you do not have to

2     enter a plea if, for any reason, you do not wish to do so?

3          Do you understand that fully?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Sir, have you received a copy of the

6     information containing the charges in this case?

7          THE DEFENDANT:  Yes, I have.

8          THE COURT:  Have you read that information?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Have you discussed it with your lawyers?

11         THE DEFENDANT:  Yes, I have.

12         THE COURT:  Have you discussed the charges and any

13    potential defenses to those charges?

14         THE DEFENDANT:  Yes, I have.

15         THE COURT:  Do you need me to read the information

16    aloud to you, or do you waive public reading?

17         THE DEFENDANT:  I'm fine waiving that.

18         THE COURT:  You're fine waiving that?  Is that what

19    you said?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Just to summarize then, you're charged in

22    Count One of the information with wire fraud in violation of

23    Title 18 U.S. Code Section 1343 and 2.

24         Do you understand that?

25         THE DEFENDANT:  Yes, I do.

1          THE COURT:  And you're charged in Count Two of the

2     information with mail fraud in violation of Title 18 U.S. Code

3     Section 1341 and 2.

4          Do you understand that?

5          THE DEFENDANT:  Yes, I do.

6          THE COURT:  You're charged in Count Three of the

7     information with bank fraud in violation of Title 18 U.S. Code

8     Section 1344 and 2.

9          Do you understand that?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  And you are charged in Count Four with

12     aggravated identity theft in violation of Title 18 U.S. Code

13     Section 1028A(a)(1), 1028A(b), and 2.

14          Do you understand that?

15          THE DEFENDANT:  Yes, I do, your Honor.

16          THE COURT:  Now I'm told that pursuant to the plea

17     agreement that you've entered into, the government will accept

18     a guilty plea as to Count One and Count Three.

19          Is that your understanding?

20          THE DEFENDANT:  Yes, it is, your Honor.

21          THE COURT:  All right.  Then at this time let me ask:

22     Ms. Chong, would you please outline on the record the elements.

23          Let's start count by count, first the wire fraud

24     offense charged in Count One of the information.

25          MS. CHONG:  Yes, your Honor.  To prove the defendant

guilty of wire fraud under Count One of the information, the

government would be required to prove beyond a reasonable doubt

the following elements:

That the defendant devised a scheme to defraud or to

obtain money or property by means of materially false or

fraudulent pretenses, representations, or promises or willfully

participated in such a scheme with knowledge of its fraudulent

nature.

Two, that the defendant acted with the intent to

defraud.

Three, that in advancing, furthering, or carrying out

the scheme, the defendant transmitted any writing, signal, or

sound by means of a wire, radio, or television communication in

interstate commerce or caused the transmission of any writing,

signal, or sound of some kind by means of a wire, radio, or

television communication in interstate commerce.

To prove the defendant guilty of bank fraud under

Count Three of the information, the government would be

required to prove beyond a reasonable doubt these elements:

One, that the defendant knowingly executed a scheme or

artifice to defraud a financial institution or knowingly

executed a scheme to obtain the money, funds, or other property

owned by or under the control of a financial institution by

means of material false or fraudulent pretenses,

representations, or promises;

1              Two, that the defendant did so with the intent to

2    deceive the financial institution and obtain the financial

3    institution's property;

4              And three, that the financial institution was at the

5    time insured by the Federal Deposit Insurance Corporation.

6              As to both Counts One and Three, the government would

7    also be required to prove by a preponderance of the evidence

8    that venue is proper in the Southern District of New York.

9              THE COURT:  All right.  Thank you.

10             Mr. Parket, do you understand that if you were to go

11   to trial, the government would have to prove each and every

12   part or element of the offenses with which you have been

13   charged as just outlined on the record by counsel for the

14   government and would have to do so beyond a reasonable doubt?

15             THE DEFENDANT:  I do, your Honor.

16             THE COURT:  Do you understand the matters that the

17   government would have to prove if you did not plead guilty?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  And you've had ample opportunity to

20   discuss that with your counsel.

21             Correct?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  All right.  Do you understand, sir -- I'm

24   going to turn and talk to you now about the potential penalties

25   for the offenses you tell me you intend to plead guilty to.

1    Do you understand that the maximum possible term of

2  imprisonment for the wire fraud offense charged in Count One to

3  which you tell me you intend to plead guilty is a term of

4  imprisonment of up to 20 years?

5    THE DEFENDANT:  I do, your Honor.

6    THE COURT:  Do you understand that the penalty for

7  Count One, the wire fraud offense, can also include a maximum

8  term of supervised release after you're released from prison of

9  up to three years?

10    THE DEFENDANT:  I do, your Honor.

11    THE COURT:  And do you understand that in addition to

12  these restrictions on your liberty, the maximum possible

13  punishment for Count One also includes certain financial

14  penalties?

15    THE DEFENDANT:  I do, your Honor.

16    THE COURT:  Do you understand that the fine allowed

17  for Count One is $250,000 or twice the gross pecuniary gain

18  relating to the offense or twice the loss to persons other than

19  yourself as a result of the offense, whichever is greater?

20    Do you understand that?

21    THE DEFENDANT:  I do, your Honor.

22    THE COURT:  And do you understand that the Court must

23  also impose a mandatory $100 special assessment with respect to

24  Count One?

25    THE DEFENDANT:  I do, your Honor.

1           THE COURT:  All right.  Do you understand that the

2   Court must also order you to pay restitution to any victims of

3   the crime charged in Count One?

4           THE DEFENDANT:  I do, your Honor.

5           THE COURT:  And do you understand that with respect to

6   Count Three, the bank fraud charge, the maximum possible term

7   of imprisonment is a term of up to 30 years?

8           Do you understand that?

9           THE DEFENDANT:  I do, your Honor.

10          THE COURT:  And do you understand that Count Three can

11  also include a maximum term of supervised release, after you've

12  been released from prison, of up to five years?

13          THE DEFENDANT:  I do, your Honor.

14          THE COURT:  And do you understand that in addition to

15  these restrictions on your liberty, the maximum possible

16  punishment for Count Three also includes certain financial

17  penalties?

18          THE DEFENDANT:  I do, your Honor.

19          THE COURT:  Do you understand that the maximum fine

20  with respect to Count Three is $1 million or twice the gross

21  pecuniary gain relating to the offense or twice the loss to

22  persons other than yourself as a result of the offense,

23  whichever is greater?

24          THE DEFENDANT:  I do, your Honor.

25          THE COURT:  Do you understand that the Court also,

1   with respect to this count, must impose the mandatory $100

2   special assessment?

3           THE DEFENDANT:  I do, your Honor.

4           THE COURT:  All right.  Give me one moment, please.

5           (Pause)

6           THE COURT:  All right.  This is really a question for

7   counsel before I turn back to talking with Mr. Parket.

8           It's my understanding -- as I've said, we've been

9   here -- not "here" but we've been close to having a plea

10  hearing previously.  And you gave me I guess it was just a

11  draft of a plea agreement at that time.  That plea agreement

12  recited restitution with respect to both Counts One and Three.

13          The current plea agreement, as I understand it,

14  carries restitution with regard to Count One, which I

15  understand to be mandatory, and then with regard to Count

16  Three, there is not mandatory restitution tied to that count.

17  But the plea agreement provides that notwithstanding the

18  offense of conviction, the defendant agrees to pay additional

19  restitution in an amount of $200,000 pursuant to Section

20  3663A(3) and 3664 of Title 18.

21          Is that correct?  Do I understand what the restitution

22  agreement is here?

23          MS. CHONG:  Think that's correct, your Honor.  There's

24  a consent provision that your Honor just cited which applies to

25  one victim, a victim under Count One of the information.

```
 1              THE COURT:  Is that the $200,000 or the larger amount?

 2              MS. CHONG:  It's the $200,000 and the larger amount,

 3    your Honor.  But the consent provision itself only applies to

 4    $200,000.

 5              THE COURT:  That's not a Count One related charge?

 6              MS. CHONG:  That is a Count One related charge,

 7    your Honor.

 8              THE COURT:  Why did you break it up this way?  In

 9    other words, you're telling me there's mandatory restitution

10    under Count One in the amount set forth in the plea agreement,

11    which we'll talk about in a minute, and then you say, in

12    addition, there's a consent provision for $200,000.

13              MS. CHONG:  That's correct, your Honor.  So for that

14    $200,000, because it falls outside of the fraud period that was

15    charged, that actually cannot be considered mandatory.

16              THE COURT:  Okay.  That's what I'm asking.

17              MS. CHONG:  Understood, your Honor.

18              THE COURT:  Are you in agreement with that

19    explanation, Ms. Gallicchio?

20              MS. GALLICCHIO:  Yes, I am, your Honor?

21              THE COURT:  Mr. Parket, do you understand the

22    discussion I just had with counsel?

23              THE DEFENDANT:  No.  I apologize.  I understand the

24    numbers.  I don't understand everything you just said.  I

25    apologize.
```

1          THE COURT:  Are you in agreement with the restitution

2     numbers that are set forth in the current plea agreement which

3     I have been given a copy of?

4          THE DEFENDANT:  I've agreed to them, yes.

5          THE COURT:  And the total amount of restitution -- we

6     talked about the fact that with respect to Count One, I am

7     obligated to order restitution, and you and the government have

8     agreed on the amount of that restitution.

9          Correct?

10          THE DEFENDANT:  I've agreed to it.  Yes.

11          THE COURT:  All right.  And there is an additional

12     $200,000 restitution amount which you are also consenting to.

13          Correct?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  All right.  And you understand that that

16     will be a consequence of your moving forward with your

17     guilty plea today.

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  All right.  Now, I have not been given a

20     proposed order of restitution.  I have the email that the

21     government sent me saying you're still working out certain

22     terms of that.

23          Ms. Gallicchio, I want to be clear.  The dollar

24     amounts are set, and we are not going to have arguments about

25     revoking or withdrawing the plea based on whatever open items

1    remain with respect to this proposed restitution order.

2           Correct?

3           MS. GALLICCHIO:  Yes.  That's correct, your Honor.

4           THE COURT:  Ms. Chong, this is the reason I wanted it

5    ahead of time.  There have been numerous false starts in this

6    case.  And it was my understanding that it was all about

7    negotiations between the parties about financial penalties.

8           MS. CHONG:  Yes, your Honor.  Those negotiations were

9    about the final amounts that you see in the plea agreement

10   today and in the forfeiture order.  I'm confident going forward

11   that we won't have disputes as to the particular provisions.

12   But there are some sensitivities that we want to observe.  We

13   want to make sure those are provided for in the restitution.

14          THE COURT:  I'm fine with all of that.  But you

15   previously gave me a plea agreement that had dollar figures in

16   it.  That's why I'm being overly careful and cautious here to

17   make sure, Ms. Gallicchio, you are in full agreement with

18   what's being represented.

19          MS. GALLICCHIO:  Yes, your Honor.  I don't know if the

20   Court still has that agreement, but those numbers have changed

21   over a period of time.

22          THE COURT:  Yes.  I know they have.

23          MS. GALLICCHIO:  In fact, Mr. Parket is agreeing to

24   pay even more than that.

25          THE COURT:  That's why I'm asking.

```
 1              MS. GALLICCHIO:  That is his intention, to fully pay
 2    back his victims.  So this is final.  We are satisfied with
 3    this.  There will be no further discussion with respect to the
 4    amounts, your Honor.
 5              THE COURT:  Okay.  You're in agreement with that,
 6    Mr. Parket?
 7              THE DEFENDANT:  Yes, I am.  Can I ask a question?
 8              THE COURT:  Why don't you ask your counsel a question.
 9              (Defendant and counsel conferred)
10              THE DEFENDANT:  I'm fine, your Honor.
11              THE COURT:  Okay.  And you understand that once we
12    proceed and I accept your plea of guilty, you cannot come back
13    and say, oh, the dollar amounts are wrong and I want to
14    withdraw my plea.
15              You understand that; right?
16              THE DEFENDANT:  Yes.  It is my intention to repay
17    everybody everything.
18              THE COURT:  All right.  So let me continue with our
19    conversation then.
20              So with respect to Count Three then -- Ms. Chong, this
21    is to you -- there is not a separate restitution obligation.
22              Correct?
23              MS. CHONG:  That's correct.
24              THE COURT:  By statute it's not required you're
25    telling me?
```

1          MS. CHONG:  Yes, your Honor, because that victim

2     actually received those monies back.

3          THE COURT:  Okay.  You're in agreement with that,

4     Ms. Gallicchio?

5          MS. GALLICCHIO:  Yes, your Honor.

6          THE COURT:  Thank you both very much for that.

7          Sir, do you understand that you are pleading guilty to

8     two separate counts, two separate offenses?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  And you understand that you will be

11    sentenced to a term of imprisonment for each count?

12         You understand that; right?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  And you understand that I could order you

15    to serve those sentences concurrently or you may be ordered to

16    serve them consecutively?

17         Do you understand that?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  Meaning one after the other.

20         THE DEFENDANT:  Yes.

21         THE COURT:  And do you understand that as part of your

22    plea agreement, you have admitted the forfeiture allegations in

23    the information with respect to Counts One and Three and you

24    have agreed to forfeit to the United States a sum of money

25    representing proceeds traceable to the commission of the

1  offense in Count One and Count Three to which you are pleading

2  guilty?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  And you have also agreed to forfeit

5  certain specified properties as well.

6          Correct?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  I have been given a copy of a proposed

9  order of forfeiture I believe.

10         Correct?

11         MS. CHONG:  You've been provided a consent preliminary

12  order, your Honor.

13         THE COURT:  Yes.  It's a proposed order until I sign

14  it.  Right?

15         MS. CHONG:  Yes, your Honor.

16         THE COURT:  Ms. Gallicchio, you've reviewed this?

17         MS. GALLICCHIO:  Yes.

18         THE COURT:  And you've reviewed it with Mr. Parket?

19         MS. GALLICCHIO:  Yes, I have.

20         THE COURT:  And it is on consent?

21         MS. GALLICCHIO:  It is.

22         THE COURT:  Sir, have you reviewed this consent

23  preliminary order of forfeiture as to specific property and

24  money judgment?

25         THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  And you've had the opportunity to discuss

2    it with your lawyers?

3          THE DEFENDANT:  Yes, I have.

4          THE COURT:  And you've agreed to all of the terms in

5    this proposed consent preliminary order of forfeiture and money

6    judgment?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  All right.  So, sir, do you understand

9    that the amount of forfeiture to which you are agreeing does

10   not serve to reduce any fines, the restitution amount we just

11   previously discussed, or any other financial penalties that the

12   Court may impose?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  All right.  I want to talk to you, before

15   we proceed, about the supervised release aspect of any

16   potential penalty.

17         Supervised release means that after you serve any term

18   of imprisonment and you are released from prison, you will be

19   subject to monitoring and certain terms and conditions will be

20   imposed.  If you violate any of those terms and conditions, you

21   can be reimprisoned without a jury trial.

22         If you're on supervised release and you don't comply

23   with any of the set terms and conditions, you can be returned

24   to prison for up to three years.  And you will be given no

25   credit for the time that you served in prison as a result of

1    your sentence, and you will be given to credit for any time

2    that you spent on supervised release prior to any violation.

3            Do you understand that?

4            THE DEFENDANT:  Yes, your Honor.

5            THE COURT:  You should also understand that there is

6    no parole in the federal system.  If you are sentenced to

7    prison, you will not be released early on parole.  There is a

8    limited opportunity to earn credit for good behavior, but you

9    would have to serve at least 85 percent of the time to which

10   you are sentenced.  There may or there may not be other

11   opportunities for early release under the First Step Act.

12           Do you understand that?

13           THE DEFENDANT:  Yes, your Honor.

14           THE COURT:  And do you understand that if I accept

15   your plea of guilty and adjudge you guilty, you may also be

16   giving up certain valuable civil rights, including the right to

17   vote, the right to hold public office, the right to serve on a

18   jury, the right to possess any kind of firearm, if you

19   currently have or could otherwise attain such rights?

20           Do you understand that?

21           THE DEFENDANT:  I do, your Honor.

22           THE COURT:  Now you've told me you are a United States

23   citizen.  I have to put on the record and be sure you

24   understand that if for any reason that is not the case and I

25   accept your plea and adjudge you guilty, there could be adverse

1    effects on your immigration status which could include further

2    detention following completion of your sentence or removal or

3    deportation from the United States.

4            So let me ask you:  Did you discuss your immigration

5    status with your lawyers and any possible immigration

6    consequences of your plea?

7            THE DEFENDANT:  We did not discuss that specifically,

8    but I was born in the Bronx in 1963.  I'm a U.S. citizen.

9            THE COURT:  Ms. Gallicchio, I'm just going to give you

10    a couple of minutes and ask you to, please, is just talk to

11    your client about it so the record is clear that he had the

12    opportunity to confer with you.

13            (Defendant and counsel conferred)

14            MS. GALLICCHIO:  Your Honor, I have discussed it with

15    him, and we did go over that portion of the plea agreement.  I

16    am satisfied that he is a U.S. citizen and that he understands

17    the consequences if that is not the case.

18            THE COURT:  All right.  Thank you.

19            That is in fact accurate, Mr. Parket?

20            THE DEFENDANT:  Yes.

21            THE COURT:  So let's talk, sir, about the sentencing

22    guidelines.  Under current law, there are certain sentencing

23    guidelines that judges must consider in determining what an

24    appropriate sentence is.

25            Have you talked with your lawyers about the sentencing

1  guidelines?

2         THE DEFENDANT:  Yes, your Honor.

3         THE COURT:  Do you understand that in addition to

4  considering the sentencing guidelines, in imposing a sentence,

5  I must also consider certain additional factors that are set

6  forth at Title 18 U.S. Code Section 3553(a)?

7         THE DEFENDANT:  Yes, your Honor.

8         THE COURT:  Do you understand that I have discretion,

9  while taking the guidelines into account, to sentence you to

10 any period of imprisonment up to 20 years on Count One and 30

11 years on Count Two?

12        THE DEFENDANT:  Yes, your Honor.

13        THE COURT:  And do you understand that even though the

14 plea agreement includes a stipulated or agreed-upon sentencing

15 guidelines calculation, I cannot determine your sentence until

16 after a presentence report is prepared by the probation

17 department and the government and you and your lawyer will have

18 the opportunity to review that report and to challenge any

19 facts that are set forth in the report?

20        Do you understand that?

21        THE DEFENDANT:  I do, your Honor.

22        THE COURT:  Now, I want to talk to you about the plea

23 agreement which has been provided to me.

24        Do you understand that according to the plea agreement

25 or in the plea agreement, you have agreed or stipulated with

1    the government that the range, the guidelines range,

2    appropriate to the offenses in Count One and Count Three to

3    which you are pleading guilty is 121 to 151 months of

4    incarceration?

5            THE DEFENDANT:  I do, your Honor.

6            THE COURT:  And do you also understand that the plea

7    agreement stipulates that the applicable fine range for your

8    case is $35,000 to $1 million?

9            THE DEFENDANT:  I do, your Honor.

10            THE COURT:  Do you understand that that stipulation

11    doesn't bind the Court or the probation department as to the

12    facts on which it is based, how to apply the guidelines to the

13    facts, or what will be an appropriate sentence in your case?

14            THE DEFENDANT:  I do, your Honor.

15            THE COURT:  Do you understand that I may decide to

16    impose a sentence that is outside the guidelines range?

17            THE DEFENDANT:  Yes.

18            THE COURT:  All right.  And just to be clear, you

19    understand that I must order restitution to any person or

20    entity injured as a result of your conduct?

21            THE DEFENDANT:  Yes.

22            THE COURT:  Do you understand that if your lawyer or

23    anybody else has attempted to estimate or predict for you what

24    your sentence will be, their estimate or their prediction could

25    well be wrong?

1              Do you understand that?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  No one, not your lawyer, not the

4   government or its lawyer, can or should give you any assurance

5   of what your sentence will be since, as I've just said, that

6   sentence cannot be determined until after the probation office

7   report is prepared and I've ruled on any challenges or

8   objections to the report and I have determined under the law

9   what the appropriate sentence is.

10              Do you understand that?

11              THE DEFENDANT:  Yes, your Honor.

12              THE COURT:  Do you also fully understand that if your

13   sentence is different from what your attorney or anyone else

14   told you it might be or if it's different from what you expect

15   or you hope it will be, if you're surprised or disappointed by

16   your sentence, if I accept your plea of guilty today, you will

17   be bound to that guilty plea and you will not be allowed to

18   withdraw that plea at the time of sentencing or at any time

19   after today?

20              Do you understand that?

21              THE DEFENDANT:  I do, your Honor.

22              THE COURT:  And do you understand that even if the

23   government doesn't oppose or take a position on what your

24   lawyer will ask me to impose as your sentence, I'm obligated to

25   impose the sentence that I believe is appropriate under the

1  circumstances and the applicable law and you will have no right

2  to withdraw your plea after today?

3           THE DEFENDANT:  I do, your Honor.

4           THE COURT:  Do you understand that you may have the

5  right to appeal your sentence under certain circumstances, even

6  if your plea agreement provides that you are waiving your right

7  to appeal?

8           THE DEFENDANT:  Yes, your Honor.

9           THE COURT:  Are you serving right now any state or

10  federal sentence?

11           THE DEFENDANT:  No.

12           THE COURT:  Are you being prosecuted anywhere for any

13  crimes other than those at issue in this case?

14           THE DEFENDANT:  No.

15           THE COURT:  Let's talk now about your plea agreement

16  itself.  As I mentioned earlier, it is a seven-page letter

17  which we have marked as Government Exhibit 1.  That letter is

18  dated January 30 of 2023.

19           Do you have a copy of it there?

20           THE DEFENDANT:  Yes, your Honor.

21           THE COURT:  Did you sign this plea agreement?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  Is that your signature on page 7 above

24  where your name is typed?

25           THE DEFENDANT:  Yes, your Honor.

1           THE COURT:  Did you read the agreement before you

2     signed it?

3           THE DEFENDANT:  Yes, your Honor.

4           THE COURT:  Did you discuss it with your attorneys

5     before you signed it?

6           THE DEFENDANT:  Yes.

7           THE COURT:  Did you talk with your lawyers about it

8     and did they explain to you all of the terms and conditions of

9     the agreement?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Did you fully understand the agreement

12    before you signed it?

13          THE DEFENDANT:  Yes.

14          THE COURT:  As you sit here today, do you have any

15    questions about this plea agreement?

16          THE DEFENDANT:  No, your Honor.

17          THE COURT:  Do you understand that your plea agreement

18    provides that you're giving up or waiving your right to appeal

19    or to litigate or challenge your sentence under a statute at 28

20    U.S. Code Section 2255 and/or 2241 if I sentence you within or

21    below the guidelines range that's set forth in the plea

22    agreement and that we discussed earlier?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Do you understand you're under no

25    obligation to waive your right to appeal or to otherwise

1    litigate your sentence?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Do you understand that the plea agreement

4    provides that you're waiving your right to appeal or to attack

5    your conviction on the basis that the government hasn't

6    provided discovery material, exculpatory material, except

7    information establishing factual innocence, or any material to

8    impeach any government witnesses?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Do you understand you're under no

11   obligation to waive those rights?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Do you understand that the plea agreement

14   provides that you will not move for a downward departure under

15   the sentencing guidelines or seek any adjustment under the

16   guidelines that's not described in the plea agreement but that

17   you may make arguments for a lower sentence under the general

18   sentencing statute that's known as Section 3553(a) that I

19   discussed with you earlier?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  And do you understand that you're under no

22   obligation to enter into such an agreement?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  All right.  I want to talk to you

25   specifically about the financial provisions set forth in this

1        plea agreement.

2                So do you understand that pursuant to the plea

3        agreement, you are admitting the forfeiture allegations in

4        Count One and Three of the information?

5                THE DEFENDANT:  Yes, your Honor.

6                THE COURT:  Do you in fact admit those allegations?

7                THE DEFENDANT:  Yes.

8                THE COURT:  Do you understand that you have agreed in

9        the plea agreement to forfeit to the United States a sum of

10       money equal to $65,441,683.82 representing proceeds traceable

11       to the commission of the offenses with which you are charged?

12               THE DEFENDANT:  Yes, your Honor.

13               THE COURT:  And do you also understand that you have

14       agreed to forfeit certain specific property, namely, the sum of

15       $2,460,040.79 previously on deposit in a JPMorgan Chase

16       account; and, two, the alternative asset on deposit in an

17       equity trust Roth IRA account?

18               THE DEFENDANT:  Yes, your Honor.

19               THE COURT:  Do you understand you're under no

20       obligation to enter into such an agreement?

21               THE DEFENDANT:  Yes, your Honor.

22               THE COURT:  And you have consented to, we've

23       previously discussed, this proposed preliminary order of

24       forfeiture as to specific property, the two accounts that I

25       referenced, and to entry of a money judgment representing

1     forfeiture in the amount of $65,441,683.82.

2              Is that correct?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  And you understand you're under no

5     obligation to consent to such an order?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  All right.  And do you understand as well

8     that in your plea agreement, you have agreed to make

9     restitution in the amount of $37,443,842.90 to the victims of

10    the offense charged in Count One of the information?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  Do you understand that you have also

13    agreed to pay additional restitution in the amount of $200,000

14    on consent?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  All right.  As we've discussed, I do not

17    have the proposed order.  But you understand that these amounts

18    are fixed and that you cannot challenge a plea of guilty, once

19    I accept it, because you have second thoughts about any of

20    these dollar amounts.

21             Correct?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  And you understand you're under no

24    obligation to enter into these agreements about financial

25    terms.

1        THE DEFENDANT:  Yes, your Honor.

2        THE COURT:  Finally, do you understand that your plea

3   agreement waives any challenge to your guilty plea and your

4   sentence based on any potential immigration consequences of

5   your plea, regardless of any advice you may have received about

6   immigration consequences?

7        THE DEFENDANT:  Yes, your Honor.

8        THE COURT:  And do you understand you're under no

9   obligation to make this waiver?

10       THE DEFENDANT:  Yes, your Honor.

11       THE COURT:  Does this plea agreement that we've been

12  talking about, the January 30, 2023, letter agreement marked as

13  Government Exhibit 1, reflect accurately your complete and

14  total understanding of the entire agreement between the

15  government and its lawyers and you?

16       THE DEFENDANT:  Yes, your Honor.

17       THE COURT:  Is everything you understand about your

18  plea and your sentence up to this point covered in this

19  agreement?

20       THE DEFENDANT:  Yes, your Honor.

21       THE COURT:  Has anything been left out?

22       THE DEFENDANT:  I do not believe so.  No.

23       THE COURT:  Apart from what's contained in that plea

24  agreement, have any promises been made to you in order to get

25  you to plead guilty?

1              THE DEFENDANT:  No.  No promises.

2              THE COURT:  Has anyone threatened you in any way in

3    order to get you to plead guilty?

4              THE DEFENDANT:  No.

5              THE COURT:  Have you been coerced in any way into

6    pleading guilty?

7              THE DEFENDANT:  No.

8              THE COURT:  All right.  Knowing all of what we've

9    talked about up to this point, do you still wish to enter a

10   plea of guilty pursuant to this agreement to Counts One and

11   Three of the information?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  All right.  Let me ask you,

14   Ms. Gallicchio, do you know of any valid reason why your client

15   would prevail at trial or why he should not be permitted to

16   plead guilty?

17             MS. GALLICCHIO:  No, your Honor.  I don't.

18             THE COURT:  All right.  Mr. Parket, we are now at the

19   point in the proceedings I told you earlier I would need you to

20   tell me in your own words what it is you did that makes you

21   guilty of the charges to which you tell me you intend to plead

22   guilty.

23             Are you prepared to do so?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  So count by count, first Count One and

1   then Count Three, please tell me what it is that makes you

2   guilty.

3           First as to the count of wire fraud, I need you to

4   tell me what you did, where you did it, when you did it, how

5   you did it.

6           Whenever you are ready, you can proceed, sir.

7           THE DEFENDANT:  Your Honor, with respect to wire

8   fraud, over the course of several years, I did many terrible

9   things, and I lied to many people.  I received loans from a

10  number of different people and a bank based on lies.  I used

11  email to send a lender --

12          THE COURT:  Go slowly, please, sir.  The court

13  reporter is trying to take down.

14          THE DEFENDANT:  I apologize.

15          THE COURT:  That's okay.

16          THE DEFENDANT:  I used email to send the lenders fake

17  documents that I created to make it look like I qualified for

18  the loans and had the money to pay them back.  I also told lies

19  in phone conversations with the lenders.  I pledged them assets

20  that were fake and that I did not have.  I specifically

21  intended to deceive them into thinking that I qualified for the

22  loans.

23          Because of those lies, I was able to borrow more than

24  $50 million in loans from several lenders, including friends, a

25  bank, and other institutions.  I was able to pay back some of

 1    the loans using other loans that I received in the same manner.

 2    I knew it was wrong and illegal at the time, but I did

 3    it anyway.  I was living in Manhattan when I committed this

 4    crime and lenders wired money to my personal accounts which are

 5    banks in Manhattan.

 6    THE COURT:  Is there anything further that the

 7    government believes I should discuss with Mr. Parket in

 8    connection with his allocution to Count One?

 9    MS. CHONG:  No, your Honor.

10    THE COURT:  Ms. Gallicchio?

11    MS. GALLICCHIO:  No, your Honor.

12    THE COURT:  All right.  Sir, do you want to talk to me

13    about Count Three then.

14    THE DEFENDANT:  Yes, your Honor.

15    THE COURT:  Again, tell me what you did, when you did

16    it in your own words, please.

17    THE DEFENDANT:  With respect to bank fraud, in June of

18    2020, I defrauded Park State Bank.  I received a loan of almost

19    $8 million from the bank based on lies.  To get the loan, I

20    provided the bank with fraudulent documentation that referenced

21    fake assets that I did not have.  I knew what I was doing was

22    illegal, and I wanted to deceive the bank so that I could

23    borrow the money.  The bank wired money to my Manhattan bank

24    accounts.  Although I repaid this loan, I know it was wrong to

25    lie to get the loan.

1        I'm sorry to everyone I hurt by telling all of these

2   lies.  I'm especially sorry to the people that I haven't been

3   able to pay back yet and to my family who has been devastated

4   by my crimes.

5        I am also focused on repaying the people that I have

6   hurt.  Words cannot express how mortified I am by what I have

7   done.  This is not who I was or what I stood for, and I make no

8   excuses for my behavior.  Now my only goal that remains in my

9   life is to heal my family and to repay my victims.

10        THE COURT:  All right.  Sir, with respect to the bank

11   fraud that you've just talked to me about, at the time that you

12   gave them this false information and documents reflecting

13   assets you didn't own, you knew what you were doing and you

14   were intending to deceive the bank.

15        Correct?

16        THE DEFENDANT:  Yes, your Honor.

17        THE COURT:  And you did that for the purpose of

18   obtaining a loan?

19        Is that what you told me?

20        THE DEFENDANT:  Yes, your Honor.

21        THE COURT:  Do you know, sir, whether this Park State

22   Bank is insured by the FDIC?

23        THE DEFENDANT:  I now know they were.  I was not aware

24   either way at the time.

25        THE COURT:  Counsel, do you stipulate?

1            MS. CHONG:  Yes, your Honor.

2            MS. GALLICCHIO:  We stipulate, your Honor.

3            THE COURT:  At the time you did what you've told me

4   about in connection with the bank fraud, did you do that also

5   from Manhattan?

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  In Manhattan?

8            THE DEFENDANT:  Yes.

9            THE COURT:  All right.  Ms. Chong, is there anything

10  further that you wish me to discuss with the defendant in

11  connection with his allocution to Count Three?

12           MS. CHONG:  No, your Honor.  Thank you.

13           THE COURT:  Ms. Gallicchio?

14           MS. GALLICCHIO:  No, your Honor.  Nothing further.

15           THE COURT:  Sir, when you did what you did with

16  respect to both the bank fraud and the wire fraud, did you know

17  that what you were doing was wrong?

18           THE DEFENDANT:  Yes, your Honor.

19           THE COURT:  Did you know that it was illegal?

20           THE DEFENDANT:  Yes, your Honor.

21           THE COURT:  And you did what you did knowingly and of

22  your own free will?

23           THE DEFENDANT:  Yes, your Honor.

24           THE COURT:  All right.  Is there anything further that

25  the government wishes me to address in connection with the

1    defendant's plea allocution?

2              MS. CHONG:  No, your Honor.  Thank you.

3              THE COURT:  That's with respect to both counts?

4              MS. CHONG:  No, your Honor.

5              THE COURT:  So at this point, I'd ask you, Ms. Chong,

6    to please summarize the government's evidence that you would

7    present if this case were to go to trial.

8              MS. CHONG:  Yes, your Honor.

9              At trial, the government's evidence would consist of

10   the following, among other things:

11             Victim testimony from individual and institutional

12   lenders, including the defendant's acquaintances, friends,

13   short-term bridge lenders, a real estate services company, a

14   bank insured by the Federal Deposit Insurance Corporation, and

15   an insurance company focused on helping clients save for

16   retirement.

17             Regarding the defendant's offense conduct, the offense

18   conduct they would attest to includes false stories constructed

19   by the defendant to explain his need for a short-term liquidity

20   for investment opportunities or real estate purchases; his

21   false representations about his financial condition and the

22   collateral he could provide for loans; and his use of false

23   representations about his delayed acquisitions and temporary

24   liquidity issues to induce existing lenders to extend the

25   maturity date of his loans or to provide him millions of

1    dollars in additional loans.

2            Additional evidence includes hundreds of pages of

3    documents created by the defendant and submitted to victims to

4    support these stories, including falsified bank and brokerage

5    statements and contracts allegedly reflecting his significant

6    assets and ownership interests in valuable investment accounts;

7    documents created by the defendant containing the names,

8    titles, and forged signatures of three actual company

9    executives he falsely claimed were his business associates in

10   order to support his stories about his temporary need for loans

11   and his ability to secure those loans; lengthy forged email

12   correspondence between the defendant; and fake email accounts

13   the defendant created for various company executives regarding

14   others supposedly taken by the defendant and his purported

15   business associates to appropriately secure the loans; bank

16   records showing the defendant's receipt of over $65 million

17   from victims into his personal accounts and his payment of

18   putative principal interest and fees to older lenders using

19   monies obtained from newer lenders; and victim testimony;

20   documents; and bank transfers showing the defendant also

21   persuaded family members to transfer funds to his personal

22   account by falsely promising to safely invest their savings on

23   their behalf and then used their funds to pay fraudulently

24   obtained loans.

25            THE COURT:  Thank you.

1          Ms. Chong, is there an adequate factual basis to

2   support a plea by Mr. Parket of guilty to Count One and Count

3   Three?

4          MS. CHONG:  Yes, your Honor.

5          THE COURT:  Ms. Gallicchio, the same question to you.

6          Is there an adequate factual basis to support your

7   client's plea of guilty to Count One and Count Three?

8          MS. GALLICCHIO:  Yes, your Honor.

9          THE COURT:  All right.  Thank you.

10         Now, Mr. Parket, we've now discussed your plea

11  agreement and possible penalties of the crime to which you tell

12  me you wish to plead guilty.  We can turn at this point to

13  entry of a plea.

14         Are you prepared to proceed?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  Will you stand, please, sir.

17         Mr. Parket, how do you plead to Count One of the

18  information?

19         THE DEFENDANT:  I plead guilty, your Honor.

20         THE COURT:  How do you plead to Count Three of the

21  information?

22         THE DEFENDANT:  I plead guilty, your Honor?

23         THE COURT:  Are you pleading guilty because you are

24  in fact guilty?

25         THE DEFENDANT:  Yes, your Honor.

```
 1                THE COURT:  Are you pleading guilty voluntarily?

 2                THE DEFENDANT:  Yes, your Honor.

 3                THE COURT:  Are you doing so of your own free will?

 4                THE DEFENDANT:  Yes, your Honor.

 5                THE COURT:  Are you doing so without any threat of

 6     violence, coercion, any kind of promise to induce you to plead

 7     guilty?

 8                THE DEFENDANT:  Yes, your Honor.

 9                THE COURT:  All right.  Let me ask you,

10     Ms. Gallicchio.

11                Are there any other questions that you believe I

12     should ask Mr. Parket in connection with his plea?

13                MS. GALLICCHIO:  No, your Honor.

14                THE COURT:  All right.  Ms. Chong, any other questions

15     you believe I should ask in connection with this plea?

16                MS. CHONG:  No, your Honor.

17                THE COURT:  All right.  Thank you.

18                Mr. Parket, you have acknowledged that you are in fact

19     guilty as charged in Count One and Count Three of the

20     information.  Because I'm satisfied that you know your rights,

21     including your right to go to trial, and you are waiving your

22     rights voluntarily and that you're aware of the consequences of

23     your plea, including the sentence that may be imposed, I find

24     that your plea is entered knowingly and voluntarily and is

25     supported by an independent basis in fact containing each of
```

Case 1:22-cr-00311-MKV

1    the essential elements of the offense.

2          I therefore accept your guilty plea, and I enter a

3    judgment of guilty on Count One and Count Three of the

4    information charging you with wire and bank fraud.

5          You may be seated, sir.

6          All right.  I want to talk to you, Mr. Parket, about

7    the process going forward before we adjourn.

8          First, as I said to you earlier, the probation office

9    needs to prepare a presentence report that assists me in

10   determining what an appropriate sentence is in this case.  In

11   order to prepare that report, the probation office needs to

12   interview you.

13         It's very important that the information that you give

14   to the probation office be truthful and that it be accurate.

15   It's important for you to cooperate with the probation office

16   in connection with any inquiries they make of you.  As I say,

17   that report is very important to me in determining what an

18   appropriate sentence is in this case.

19         Now, once the report is prepared in draft form, you

20   and your lawyer will have the opportunity to review that

21   report, as will the government and its lawyer.  Each of you,

22   the government and you, will have the opportunity to file any

23   objections to the report.  You and Ms. Gallicchio, your

24   counsel, can comment upon the report.  The probation office may

25   make revisions based on input it receives from you or from the

1    government.

2           Ultimately it will file a report in final form which I

3    will consider seriously in connection with your sentencing.

4    Before I sentence you, you will have the opportunity address

5    the Court directly.  you're not obligated to do so though.

6           Ms. Gallicchio, I assume you wish to be present at any

7    interview.

8           MS. GALLICCHIO:  Yes, I do, your Honor.

9           THE COURT:  All right.  I therefore order that no

10   interview take place unless counsel is present.  But I would

11   ask you, Ms. Gallicchio, to please reach out to the probation

12   office and try to schedule an interview with them in the next

13   two weeks.

14          MS. GALLICCHIO:  Yes, your Honor.

15          THE COURT:  All right.  I remind you, Ms. Chong,

16   please provide a statement of facts to the probation office in

17   connection with the presentence report.  Once you receive the

18   draft report, I just remind each side to please give timely

19   comments or objections to the probation office.  Courtesy

20   copies will be provided to chambers at that time.

21          Any submission by the defendant in connection with

22   sentencing is due two weeks before sentencing.  The

23   government's submission is due one week before sentencing.

24          In terms of a date, June 28, does that work?

25          MS. GALLICCHIO:  Yes.  That's fine.

1            THE DEPUTY CLERK:  At 11:00 a.m.

2            THE COURT:  Any objection from you, Ms. Chong?

3            MS. CHONG:  No, your Honor.

4            THE COURT:  June 28 at 11:00 a.m.

5            I just remind you again, Mr. Parket, that failure to

6   be truthful with the probation office or with the Court could

7   have an adverse effect on your sentencing.  It could subject

8   you to separate further prosecution.

9            Specifically, I reserve the right to deny you the

10  two-level reduction in the calculation of your offense level

11  under the sentencing guidelines if you do not cooperate fully

12  with the probation office in connection with preparation of

13  your report.

14            Do you understand that, sir?

15            THE DEFENDANT:  Yes, your Honor.

16            THE COURT:  All right.  Now, Mr. Parket has been

17  released on bail up to this point.

18            Is there any objection to that continuing?

19            MS. CHONG:  No, your Honor.

20            THE COURT:  All right.  So, sir, I just remind you.

21  You do remain free on release until the date of your

22  sentencing.  All of the terms and conditions that were imposed

23  at the time you were initially released on bail remain in

24  effect, and you need to comply with them.

25            It's also critically important that you be in this

1    courtroom on the date set for sentencing at the time set for

2    sentencing.  If you're not here, that's called bail jumping,

3    and you could be subject to a fine or a separate prison term in

4    connection with that offense, separate and apart from what

5    we've discussed today.

6              Do you understand that?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  All right.  I am going to sign the consent

9    preliminary order of forfeiture that's been submitted to me,

10   and it will be filed on the docket.  That order provides that

11   the money judgment is now final as of today's date.  There will

12   be a final order of forfeiture that will be submitted to me and

13   that I will enter at the time of sentencing dealing

14   specifically with the two accounts, the specific property.

15             Correct, Ms. Chong?

16             MS. CHONG:  Yes, your Honor.

17             THE COURT:  And that's your understanding as well,

18   Ms. Gallicchio?

19             MS. GALLICCHIO:  Yes, your Honor.

20             THE COURT:  Today is the 15th.  So I would just ask

21   counsel to please order a copy of the transcript of today's

22   proceeding and file it on the docket.  Make it available to the

23   Court.  I do go back and carefully look at the record,

24   particularly the conversation with Mr. Parket in connection

25   with his plea allocution, as I am preparing for sentencing.

1          MS. CHONG:  Yes, your Honor.

2          THE COURT:  Is there anything further, Ms. Chong?

3          MS. CHONG:  No, your Honor.  Thank you.

4          THE COURT:  Anything from you, Ms. Gallicchio?

5          MS. GALLICCHIO:  No, your Honor.

6          THE COURT:  Thank you very much.

7          Thank you very much to our court reporter.  We'll

8     stand adjourned then.  Thank you.

9          (Adjourned)