

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 13, 2023

The Honorable Mary Kay Vyskocil
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

   **Re:** *United States v. Jeffrey Soberman Parket*, 22 Cr. 311 (MKV)

Dear Judge Vyskocil:

  The Government respectfully submits this letter in advance of the November 16, 2023 sentencing of defendant Jeffrey Soberman Parket.

  The defendant is a successful former financier turned serial fraudster who drew on his extensive experience in finance to construct an intricate, years-long, one-man Ponzi lending scheme through which he deceived family members, friends, and colleagues into lending him a staggering total of more than $65 million. Presentence Investigation Report ("PSR") ¶ 34. He paid some of that money back to certain lenders, going so far as to pay them millions of dollars in "interest" using funds from other victims, for the specific purpose of styling the short-term loans as investment opportunities and thereby attracting yet more lenders. PSR ¶¶ 11, 17. To other victims, he told increasingly elaborate lies to extract numerous loans, in at least one case scraping a victim of everything he had saved over a lifetime and even persuading him to take on debt for the purpose of supplying Parket with loans.

  A sentence of imprisonment within the stipulated U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 121 to 151 months' imprisonment would be a fair and appropriate sentence for this defendant, who methodically destroyed the people around him for no apparent reason but to continue living in comfort. In his submission, the defendant contends, incredibly, that he should spend *not a single day* behind bars, citing the "harsh consequences that he has already suffered" due to the revelation of his massive fraud. Def. Br. 11. To the contrary, as detailed below, a substantial sentence is necessary to reflect the seriousness of the offense conduct and to provide just punishment; to deter the defendant and others from committing similar offenses; and to promote respect for the law.

## A. Background

### 1. The Offense Conduct

From at least in or about November 2016 through in or about November 2021, Parket perpetrated a scheme to fraudulently obtain loans from more than a dozen individual and institutional lenders (the "Lenders") residing in at least five states, resulting in approximately $65 million in loans and $37 million in losses to the Lenders.

Parket, a former bond trader and former principal of several hedge funds, falsely represented to most of the Lenders that he needed short-term liquidity for investment opportunities or real estate purchases. PSR ¶ 11. Parket falsely represented to the remaining Lenders that he would invest their funds and repay them with interest or in the form of regular distributions. In fact, he sought the loans to pay off debts he had incurred through bad investments and to pay off earlier loans. To secure the loans and to prove his ability to quickly repay them, Parket pledged a variety of fake assets to the Lenders and falsely represented to the Lenders—through emails, phone conversations, in-person meetings, and many types of documentation—his purportedly significant net worth and his purported ownership interests in valuable investment accounts. PSR ¶¶ 11-16.

To successfully deceive his victims and the lawyers they employed to assist in conducting diligence and structuring the loan transactions, Parket fabricated hundreds of pages of elaborate paperwork. What is more, he impersonated real people he falsely claimed were his business associates. PSR ¶ 24. For example, to fake his ownership of valuable stock in a company that was allegedly being acquired by the venture capital arm of General Motors, Parket created tax returns, brokerage statements and various forms of documentation purportedly evidencing his redemption rights as to those shares, held through a particular managed fund. He then created elaborate fake email correspondence with at least three real business executives and forged their signatures on letters to prove pieces of his story. Among other things, he made it appear as though the managing partner of the fund in which he purported to own interests had personally verified that Parket had placed restrictions on what could be done with stocks Parket held through the fund.

In addition to obtaining millions of dollars in loans through these heavily papered transactions, Parket also systematically preyed on close family members whose money he promised to invest and safeguard. PSR ¶ 19. For example, he repeatedly borrowed millions of dollars from an elderly relative whose bank accounts he controlled, issuing her promissory notes that purported to guarantee the loans with a list of fake assets and investments.

### 2. The Proceedings and Guidelines Range

On February 8, 2022, Parket was charged by complaint with one count of wire fraud, in violation of 18 U.S.C. § 1343; one count of mail fraud, in violation of 18 U.S.C. § 1341; one count of bank fraud, in violation of 18 U.S.C. § 1344; and three counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A. On June 2, 2022, he waived indictment and was charged by information.

On February 15, 2023, the defendant pleaded guilty to wire fraud and bank fraud, pursuant to a plea agreement. The parties stipulated that the defendant's Total Offense Level was 32 and that his Criminal History Category was I. Accordingly, the defendant's applicable Guidelines range is 121 to 151 months' imprisonment.[1] Parket also consented to the entry of a consent preliminary order of forfeiture requiring him to forfeit $65,441,683.82 to the United States, including $2,460,040.79 that he had wired to one of his sons shortly before his arrest and the alternative asset on deposit in his Roth IRA account, consisting of shares of unknown value that he had used in his scheme as collateral worth millions of dollars. He also agreed to pay $37,443,842.90 in restitution to the victims.

On March 28, 2023, Parket's wife, Robyn Parket, filed a claim for the defendant's forfeited Roth IRA account, after the defendant signed a divorce stipulation promising her half of the account. After a series of adjournments, the defendant's sentencing was adjourned sine die until the Court resolved the dispute over that account. ECF No. 85. On September 25, 2023, the Court entered a stipulation resolving the respective interests of the Government and Ms. Parket in the account. ECF No. 84.

## II.  Discussion

### A.  Applicable Law

The Guidelines are no longer mandatory, but they still provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines range is thus "the lodestar" that "'anchor[s]'" the district court's discretion. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345-46 (2016) (quoting *Peugh v. United States*, 133 S. Ct. 2072, 2087 (2013)).

After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in Title 18, United States Code, Section 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing: "a) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for that offense; b) the need to afford adequate deterrence to criminal conduct; c) the need to protect the public from further crimes by the defendant; and d) the need for rehabilitation." *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (citing 18 U.S.C. § 3553(a)(2)).

### B.  A Guidelines Sentence Is Appropriate.

Jeffrey Soberman Parket was driven to crime not by dire poverty, a lack of education, or a failed support system. He is a once-millionaire who concedes that he has enjoyed every possible advantage in life: wealth, prestigious academic degrees, and a strong support structure that

---

[1] As noted by separate letter, the defendant does not qualify for a two-level offense level reduction under the November 2023 version of the Guidelines because the defendant personally caused at least one victim substantial financial hardship. *See* U.S.S.G. § 4C1.1(a)(6).

included numerous close family members and friends. Because of these advantages, even after losing his substantial assets and incurring debts through bad investments, he had options. But instead of drawing upon any of his resources, or adjusting his lavish lifestyle, the defendant decided to live on other people's money. Over the course of not weeks or months but *years*, the defendant used his deep financial knowledge to methodically design and execute a loan fraud scheme that inflicted enormous damage on his victims, including his closest friends and family members.

This is the backdrop against which his crime must be understood: instead of using his financial expertise to rebuild his fortune—or to seek out the whistleblower rewards that he now claims he is intent on collecting in order to pay restitution to his victims—he used his expertise to systematically prey upon those around him. He constructed elaborate stories about the illiquidity of his purportedly fabulous assets and the lucrative investment opportunities for which he allegedly needed short-term loans. To demonstrate his need for temporary bridge funding, and to assure his victims of his ability to secure those loans many times over, he carefully fabricated thousands of pages of false bank records, brokerage statements, operating agreements, and freeze letters that deceived his sophisticated individual and institutional lenders, as well as their many lawyers. When paper alone proved insufficient to satisfy these lenders and lawyers, the defendant impersonated real people to prop up his lies, faking detailed correspondence allegedly written by real corporate executives, forging their signatures, and even falsifying a driver's license to persuade his lenders of the legitimacy of his representations.

His offense conduct is extraordinarily egregious in six additional respects, each of which counsels in favor of a Guidelines sentence. A substantial sentence is necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and deter the defendant and others from committing similar offenses.

*First*, as detailed in several victim impact statements, Parket exploited people with whom he deliberately cultivated close relationships and even used what he learned about their personal circumstances to underscore the soundness of lending him money. Though what he sought were loans, he told lies to style the loans as risk-free investments, from which the victims could expect high returns in the form of high amounts of interest. Thus, the damage that the defendant inflicted on his victims cannot be measured in money or even in the lost opportunities represented by that money. The defendant inflicted enormous and lasting emotional damage on his victims.

*Second*, Parket was not content to take millions of dollars from his victims. Instead, he exploited most of his individual victims repeatedly. One of the victims not only lost a self-made fortune of millions of dollars to the defendant—with the defendant's encouragement, this victim went so far as to take on debt in order to provide the defendant loans. The defendant thus left this victim financially ruined as well as psychologically devastated. Today, that victim is unable to adequately care for his dependents, including his young children, because of the defendant's stunning, years-long deception. This aspect of the defendant's fraud warrants emphasis because it was so excessive and unnecessary—though the defendant claims he is remorseful for his actions, it is difficult to square that remorse with the extreme, years-long cruelty of his actions toward this victim, and others from whom he sought to extract as much as he possibly could. The result, as

documented in the victim impact letters submitted to the Court, is extraordinary, intergenerational harm, inflicted not only on the victims who trusted the defendant, but also on their families.

*Third*, Parket's fraud cannot be dismissed as a one-off "mistake" or even a months-long lapse in judgment. Though he argues that his lack of criminal history makes his offense conduct an anomaly, the record shows something else entirely—a meticulously crafted fraud that he got away with and to which he devoted enormous amounts of time and energy, for *years*. For years, he stole, lied, and broke the law as part of the charged scheme. For years, he deceived sophisticated institutional investors as well as individual investors and so carefully constructed his lies and fake records that he convinced the many lawyers reviewing the paperwork that made these loans possible. For years, he took money from his own family members and friends, with the knowledge he had no means to repay that money. His fraud was not an anomaly, accident, or misstep. It was a professional enterprise.

*Fourth*, contrary to his characterization, he did not voluntarily cease his conduct. Def. Br. 27-28. Rather, it appears that when a victim declined to allow him yet another extension on a major loan, his scheme collapsed. The Government acknowledges Parket's willingness to confess to his crimes and believes that is a factor the Court should consider in imposing sentence. However, the Government disagrees with the defense's claim that Parket's confession and willingness to work with the Government in calculating restitution make him "even more impressive and worthy of recognition than a standard cooperator who typically only begins cooperating after he or she is indicted or learns that he or she is the target of an investigation." Def. Br. 20. First, his willingness to confess speaks less to his remorse than to the scale and incontrovertibility of his fraud. Indeed, the Government spoke with multiple victims and amassed fraudulent documents that established the defendant's culpability for wire fraud before ever speaking with the defendant. PSR ¶ 24. And from the start, the very nature of his fraud made his guilt all but uncontestable. This is because he did not anonymously defraud strangers over the phone or by email. Rather, he traded on his name and professional reputation as a respected financier and targeted people with whom he cultivated close personal and professional relationships. Second, Parket had every incentive to work closely with the Government to clarify the losses suffered by each victim—his scheme involved making a complicated series of partial repayments to certain victims, and failure to bring those repayments to the Government's attention would have resulted in a higher restitution obligation.

In any event, in light of the defendant's acceptance of responsibility, the defendant was permitted to plead pursuant to an agreement that dropped the aggravated identity theft counts originally charged by complaint, which would have come with a two-year mandatory term that would have run consecutively to any sentence imposed on the remaining counts. The credit the defendant seeks is already built into his Guidelines range.

*Fifth*, the defendant sets forth no mitigating circumstances that would help explain his conduct or warrant a lighter sentence. He manipulated his victims emotionally and destroyed some of them financially, for no apparent purpose other than to continue living a life of luxury from his penthouse in Manhattan. There was no sympathetic reason for any of his actions, nor has he attempted to provide one to the Court. Instead, he focuses on why, given what he has experienced since his arrest, he should not be imprisoned. For example, he claims that his conduct was so egregious as to render him a social and professional pariah, and thus no further punishment is

necessary. Def. Br. 27. But just punishment is only one consideration in determining a just sentence. A just sentence must also reflect the seriousness of the offense and promote respect for the law, 18 U.S.C. § 3553(a)(2)(A), and the defendant's proposal—home detention—accomplishes neither.

*Sixth*, the several whistleblower suits filed by the defendant, allegedly for the specific purpose of obtaining awards that can be used to pay the tens of millions of dollars he owes to his victims in restitution, are almost irrelevant to the question of the appropriate sentence in this case. Whether or not the Court sees something to commend in Parket's whistleblower efforts, his belief that those efforts entitle him to escape accountability for his crimes against his victims is far less compelling.

In his sentencing submission, the defendant contends that he should not spend even *a single day* behind bars because he must continue his "tireless work on his whistleblower cases . . . in service of his unwavering commitment to provide financial remuneration to the victims of this crime." He further claims these efforts "are in no way designed to enrich himself" and that home detention would "protect[] his victims by providing them with a greater chance of being repaid due to his whistleblower cases." Def. Br. 22. But he is no position to say what would be best for the victims. And no whistleblower pay-out, years in the future, will make his victims whole. Further, his attempts to parlay his whistleblower suits into a get-out-of-jail-free card are consistent with the self-interest and extreme manipulation that are the hallmarks of his fraud. The defendant's confidence in his own intelligence is clear—he once dug himself out of a financial hole with other people's hard-earned money; it appears he now believes he can evade justice by providing regulators information of value about other fraudsters. Irrespective of the value of the information he provides about one scheme or another, for *this* scheme, *his* scheme, he must face just punishment.

### C.  Conclusion

For the reasons set forth above, a term of imprisonment within the stipulated Guidelines range would be sufficient but no greater than necessary in this case.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____
Jane Y. Chong
Assistant United States Attorney
(917) 763-3172

Cc: Amy Gallicchio, Esq.
    Lise Rahdert, Esq.