O1B5parS

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,              New York, N.Y.

 4              v.                          22 Cr. 311 (MKV)

 5   JEFFREY SOBERMAN PARKET,

 6              Defendant.

 7   ------------------------------x

 8                                          January 11, 2024
                                            2:05 p.m.
 9

10   Before:

11                    HON. MARY KAY VYSKOCIL,

12                                          U.S. District Judge

13

14                         APPEARANCES

15   DAMIAN WILLIAMS
          United States Attorney for the
16        Southern District of New York
     BY:  JANE CHONG
17        Assistant United States Attorney

18   FEDERAL DEFENDERS OF NEW YORK
          Attorneys for Defendant
19   BY:  AMY GALLICCHIO
              -and_
20   LANKLER, SIFFERT & WOHL, LLP
     BY:  LISE E. RAHDERT
21
     ALSO PRESENT:  MARK RIZZO, Inspector, U.S. Postal Service
22

23

24

25
```

O1B5parS

```
 1              (Case called)
 2              THE DEPUTY CLERK:  Counsel, starting for the
 3    government please state your name for the record.
 4              MS. CHONG:  Good afternoon, your Honor.  Jane Chong
 5    for the government, and I am joined at counsel table by U.S.
 6    Postal Inspector Mark Rizzo.
 7              THE COURT:  Good afternoon, Ms. Chong.  Good afternoon
 8    to you, Inspector Rizzo.  I have seen your name, so thank you
 9    for being here today.
10              MS. RAHDERT:  Good afternoon, your Honor.  Lise
11    Rahdert, Lankler, Siffert & Wohl on behalf of Jeffrey Parket,
12    and I am joined at counsel table by my co-counsel Amy
13    Gallicchio of Federal Defenders of New York.
14              THE COURT:  Good afternoon to both of you.
15              MS. RAHDERT:  Good afternoon.
16              THE COURT:  And good afternoon to you Mr. Parket, you
17    say it; right?
18              THE DEFENDANT:  Yes.
19              THE COURT:  Thank you.
20              Good afternoon as well to our court reporter.  Thank
21    you.
22              As you know, I am Judge Vyscocil and we are here this
23    afternoon for the purpose of sentencing Mr. Parket.  Sir, let
24    me just confirm for the record that you do speak and understand
25    English clearly.
```

O1B5parS

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  And you do not need the services of an

3     interpreter?

4          THE DEFENDANT:  No, I do not.

5          THE COURT:  Ms. Chong, are there victims entitled to

6     notice?  I know we have some victim impact statements but has

7     everyone entitled to notice been given notice?

8          MS. CHONG:  Yes, your Honor.

9          THE COURT:  Thank you.

10          So, by way of background, Mr. Parket was charged

11     initially in a six-count complaint.  On February 15th, he

12     waived indictment and the government filed a superseding

13     information which contained four counts, but pursuant to a plea

14     agreement with the government, Mr. Parket pled guilty to two

15     counts of that information:  Count One, which charged him with

16     wire fraud, in violation of Title 18, United States Code,

17     Section 1343 and 2, and Count Three of that information charges

18     him with bank fraud in violation of Title 18 United States Code

19     Section 1344 and 2.

20          Since that time the Probation Office has completed its

21     investigation, the parties have filed their sentencing

22     submissions.  Please listen very carefully.  I'm going to state

23     for the record what it is I have before me that I have

24     considered in connection with today's sentencing and I want to

25     be sure I'm not missing anything.  All right?

O1B5parS

1          So, I have first the revised final presentence report

2     filed on May 9, 2023, that's at ECF no. 58.  I will note that

3     the Probation Office made a number of revisions in response to

4     comments or requests from the defense including to paragraphs

5     9, 27, 63, 64, and then there were additional comments or

6     additions that resulted in changes to paragraphs 8(k), 17, 24,

7     54, 56, 58, 59, 65, 68, 70, 72, 74, 75, 79, 82, 84 through 87,

8     and a footnote was added to paragraph 90.

9          In terms of objections, it is the Court's

10    understanding that the government provided no objections to

11    probation but did note, make a comment to probation which

12    resulted in an amendment to paragraph 11 with regard to the

13    amount of fraudulent loans obtained.

14         In a letter dated May 1st, defense counsel provided

15    objections to five of the paragraphs:  Paragraph 19, 20, 27,

16    30, and Appendix A of the PSR.  I will turn to ruling on those

17    in a moment but for now I am noting what it is that I have.

18         I will note that in addition, in connection with the

19    defense submission, there were a number of additional comments

20    or corrections that were made belatedly, untimely, to paragraph

21    63, 69, 70, 83, and 90.

22         In addition, I have Mr. Parket's sentencing submission

23    that I just alluded to that was filed on June 14; that's at ECF

24    no. 65.  That contained two corresponding appendices and 12

25    exhibits.  Those exhibits include a letter from Mr. Parket

O1B5parS

himself, seven letters of support submitted on his behalf, two

exhibits from his attorneys relating to involvement in the

whistle-blower action, they were filed under seal, a history of

Mr. Parket's blood donations at the New York Blood Center, and

a declaration from a professor at Harvard regarding certain

sentencing statistics.

Then I received, with leave of Court, a supplemental

sentencing submission from Mr. Parket filed on November 9,

2023.  That's at ECF no. 91.  That's under seal, as is at least

parts of the initial sentencing submission.

I then have the government's sentencing submission

which was filed untimely on November 13 of 2023.  That's at ECF

no. 93.  That submission was due on November 9th.  On November

13th, at 4-something in the morning, the Court received an

e-mail from the government apologizing for filing its

submission in an untimely manner and explaining that it had the

sentencing calendared for the wrong date.  It seems to be a

consequence of the fact that things were adjourned several

times.  I will just note for the record it is really not

acceptable for the government to file things late.  I do have

the government's apology and I have taken the submission into

account, obviously.

I also have seven victim impact statements along with

the victim identifier numbers that the government proposes that

we use today for any victims who wish to speak.

O1B5parS

1          Then, last night I received a letter from the

2     government with a request that the government be permitted to

3     read to me a victim impact statement of a victim who had hoped

4     to be here, as I understand it, but was unable to be here.  I

5     will note that I have carefully read and reviewed that

6     statement.  It appears to parallel one of the seven statements

7     that were provided; is that correct?

8          MS. CHONG:  That's correct, your Honor.

9          THE COURT:  All right.

10          Then I have a consent preliminary order of forfeiture

11     as to specific property and money judgment which was signed by

12     all parties, so ordered by the Court on February 15 of 2023.  I

13     have a stipulation and order which was signed on September 25,

14     2023, that's at ECF no. 84, that is a stipulation between the

15     government and a third-party petitioner, Robyn Parket, where

16     the government recognizes the petitioner's interest in a

17     portion of the specific property in the preliminary order of

18     forfeiture.

19          I then have a proposed, what's labeled, Consent Order

20     of Restitution.  It is my understanding that's now been signed;

21     is that correct?

22          MS. CHONG:  That's correct, your Honor.

23          THE COURT:  And what was given to the Court is in fact

24     on consent, counsel?  I am asking the defense.

25          MS. RAHDERT:  Yes, your Honor.

O1B5parS

| | |
|---|---|
| 1 | THE COURT:  And Ms. Dempsey, you have that signed |
| 2 | order? |
| 3 | THE DEPUTY CLERK:  Yes, your Honor. |
| 4 | THE COURT:  Thank you. |
| 5 | So that is the entirety of what the Court has before |
| 6 | it and has considered in connection with sentencing.  Is that |
| 7 | the totality of the record, Ms. Chong? |
| 8 | MS. CHONG:  Yes, your Honor. |
| 9 | THE COURT:  Are you taking the lead, Ms. Rahdert? |
| 10 | MS. RAHDERT:  Yes, your Honor. |
| 11 | THE COURT:  Is that the totality of the record? |
| 12 | MS. RAHDERT:  Yes, it is your Honor.  I just want to |
| 13 | note for clarity for the record that our supplement was filed |
| 14 | on November 6. |
| 15 | THE COURT:  OK.  It is at ECF no. 9 in any event. |
| 16 | That will reflect whatever the date is but the date is not |
| 17 | really material; right? |
| 18 | MS. RAHDERT:  Correct, your Honor. |
| 19 | THE COURT:  Thank you. |
| 20 | So let me first ask Ms. Rahdert, have you had the |
| 21 | opportunity to read the presentence report, to discuss it with |
| 22 | your client, and to lodge any comments or objections? |
| 23 | MS. RAHDERT:  Yes, we have, your Honor.  I just want |
| 24 | to let the Court know that although we did make some objections |
| 25 | in the original draft that probation did not implement, we are |

O1B5parS

1    no longer pursuing those objections, and the only corrections

2    on which we request a ruling from the Court are the ones listed

3    in the appendix to our sentencing submission.

4            THE COURT:  I appreciate that.  I will go through them

5    one by one just to confirm with you though.  OK?

6            Mr. Parket, have you had the opportunity to review the

7    presentence report, to talk to your lawyers about it, to raise

8    with them any objections, concerns, or comments that you might

9    have?

10           THE DEFENDANT:  Yes, I have, your Honor.

11           THE COURT:  Has the government read the presentence

12   report and tendered any objections it wishes to make?

13           MS. CHONG:  Yes, your Honor.

14           THE COURT:  One final question.  The Court is in

15   possession, as I mentioned, of originally there were seven

16   victim impact statements.  I received, really in effect, a

17   duplicate last night.  Has the defense seen all of those?

18           MS. RAHDERT:  Yes, we have, your Honor.

19           THE COURT:  Because, as you know, I would be obligated

20   to disclose any information that's not publicly part of the

21   record, but you have them and you are aware of them and you

22   have whatever opportunity you wish to respond and to comment;

23   right?

24           MS. RAHDERT:  That's correct, your Honor.  Thank you.

25           THE COURT:  Let me ask a few questions of the parties.

O1B5parS

| | |
|---|---|
| 1 | With respect to forfeiture, as I previously noted, I did enter |
| 2 | a consent preliminary order of forfeiture as to specific |
| 3 | property and money judgment, a sum of money equal to |
| 4 | $65,441,683.82 representing the proceeds chargeable to the |
| 5 | offenses charged in Count One and Three, together with certain |
| 6 | specific property that was the subject of that forfeiture |
| 7 | order.  As I said earlier, Ms. Robyn Parket, the defendant's, I |
| 8 | believe, wife or ex-wife, filed petition for a forfeiture |
| 9 | hearing but that issue has now been resolved pursuant to the |
| 10 | stipulation that is on the docket at ECF no. 84.  Is that |
| 11 | accurate? |
| 12 | MS. CHONG:  That's accurate, your Honor. |
| 13 | THE COURT:  From the defense's point of view is that |
| 14 | accurate? |
| 15 | MS. RAHDERT:  Yes, your Honor. |
| 16 | THE COURT:  Is Robyn Parket in attendance? |
| 17 | MS. RAHDERT:  No. |
| 18 | THE COURT:  Is there anything further that the Court |
| 19 | needs to do with respect to the forfeiture issue, Ms. Chong? |
| 20 | MS. CHONG:  At the moment, no, your Honor.  However, I |
| 21 | have conferred with the clerks in our office who work on |
| 22 | forfeiture matters and they inform me that per their normal |
| 23 | practice, after the sentence is imposed they will send to the |
| 24 | Court a package that consists of a declaration and final order |
| 25 | of forfeiture. |

O1B5parS

1          THE COURT:  Thank you.  But, for the record, that

2    final order of forfeiture is part of the Court's sentencing

3    here and will be incorporated into the judgment that I will

4    enter.

5          With respect to restitution, you have confirmed that

6    that has now been signed so I can move on from there.

7          With respect to the stipulated guidelines range, I

8    just want to put on the record that the parties entered into

9    their plea agreement in August of 2022 and stipulated to a --

10   no?

11         MS. RAHDERT:  Your Honor, I believe the final plea

12   agreement is dated January 30th of 2023.

13         THE COURT:  Let me take a look.  What date are you

14   telling me?

15         MS. RAHDERT:  January 20th of 2023.

16         THE COURT:  In any event, it included a stipulated

17   guidelines range of 121 to 151 months.  I issued an order

18   directing the parties, I issued that on November 9 of 2023,

19   asking the parties to submit a letter advising the Court before

20   the sentencing of the impact of any amendments to the

21   Sentencing Guidelines that went into effect on November 1st of

22   2023.  The parties filed a joint letter -- this really should

23   be referenced as part of the record in connection with today's

24   sentencing -- that letter is ECF no. 94, informing the Court

25   that Mr. Parket does not qualify for the two-level offense

O1B5parS

```
1    level reduction for zero point defendants.  Mr. Parket doesn't
2    contest this fact and the guidelines range of 121 to 151 months
3    remains unchanged.
4              Is that accurate, Ms. Chong?
5              MS. CHONG:  Yes, your Honor.
6              THE COURT:  Ms. Rahdert?
7              MS. RAHDERT:  Yes, it is.  Thank you.
8              THE COURT:  Thank you.
9              Let me ask defense counsel, have you reviewed with
10   Mr. Parket the mandatory, standard, and special conditions of
11   supervised release that have been proposed by probation in the
12   PSR?
13             MS. RAHDERT:  Yes, we have.
14             THE COURT:  Are you comfortable with my referring to
15   the mandatory and standard conditions generically rather than
16   putting them on the record verbatim?
17             MS. RAHDERT:  Yes, we are, your Honor.
18             THE COURT:  Mr. Parket, have you reviewed those
19   conditions with your lawyer and do you understand all of them?
20             THE DEFENDANT:  Yes, I do, your Honor.
21             THE COURT:  Specifically, with respect to the special
22   conditions, I am obligated by the Second Circuit to put those
23   on the record.  Probation has proposed that if there is a term
24   of supervised release after any term of imprisonment that you,
25   during that period, participate in outpatient mental health
```

O1B5parS

1    treatment approved by the Probation Office, that you continue

2    to take any prescribed medication unless otherwise instructed

3    by your healthcare provider, and that you contribute to the

4    costs of services rendered based on your ability to pay or on

5    the availability of any third-party payments like insurance,

6    for example.

7         I would authorize the release of available evaluations

8    and reports including the presentence report to the healthcare

9    provider.

10         Next, Probation recommends that there be a search

11    condition which would provide that you submit your person, any

12    property, residence, vehicle, papers, computer, or other

13    electronic communication, data storage device, cloud storage,

14    or media and effects, to a search by any United States

15    probation officer who, if needed, could enlist the assistance

16    of law enforcement.  Any such search would be conducted when

17    there is a reasonable suspicion concerning violation of a

18    condition of supervision or any unlawful conduct by the person

19    being supervised, which obviously is you, Mr. Parket.  Failure

20    to submit to a search may be grounds for revocation of release

21    and you would be ordered to warn any other occupants of your

22    premises that the premises may be subject to search pursuant to

23    the condition.  I would order that any search be conducted at a

24    reasonable time and in a reasonable manner.

25         There is also a recommended condition that you provide

O1B5parS

1   the probation officer with access to any requested financial

2   information and that you not incur new credit charges or open

3   any additional lines of credit without the approval of the

4   probation officer, unless you are in compliance with the

5   payment schedule with regard to any financial penalties.

6            Do you understand all of those conditions, Mr. Parket?

7            THE DEFENDANT:  Yes, I do, your Honor.

8            THE COURT:  Have you had the chance to talk to your

9   lawyers about them?

10            THE DEFENDANT:  Yes, I have.

11            THE COURT:  Are there any objections to those special

12   conditions?

13            MS. RAHDERT:  No, your Honor.

14            THE COURT:  Thank you.

15            Does the government still agree that Mr. Parket is

16   entitled to a two-level reduction in the offense level

17   calculation based on clearly demonstrated acceptance of

18   responsibility?

19            MS. CHONG:  Yes, your Honor.

20            THE COURT:  And does the government intend to move for

21   a further one-level reduction based on timely notice of intent

22   to plea?

23            MS. CHONG:  Yes, your Honor.

24            THE COURT:  The motion is granted and I did, in doing

25   my own independent guidelines calculation, anticipate that the

O1B5parS

1    motion would be made and granted, so I have factored in a

2    three-level reduction in the calculation of Mr. Parket's

3    offense level.

4            Let me turn to the objections to the PSR or the

5    comments that were raised by the defense.  So, counsel, are you

6    telling me that the objections to paragraphs 19 -- well, let me

7    go one by one.  19; is that withdrawn?

8            MS. RAHDERT:  Yes, your Honor.

9            THE COURT:  The objection to paragraph 20; is that

10   withdrawn?

11           MS. RAHDERT:  Yes.

12           THE COURT:  Paragraph 27?

13           MS. RAHDERT:  Yes.

14           THE COURT:  Paragraph 30?

15           MS. RAHDERT:  Yes.

16           THE COURT:  And there was an objection to Appendix A

17   arguing that the information from the JSIN database is not

18   sufficiently reliable or relevant.

19           MS. RAHDERT:  We are not pursuing that objection, your

20   Honor.

21           THE COURT:  I hope not, in light of the fact that you

22   put in your own statistics.

23           All right.  Now, there were a number of items that you

24   raised in your actual submission so let me go through them one

25   by one.  I will say, to be perfectly honest, these appear to be

O1B5parS

1    either non-controversial or not particularly significant, so

2    what I am going to do is state them, you can correct me if I

3    misstate it in any way, and then I want to know, Ms. Chong,

4    whether you agree or have any objections.

5          So, there is a comment with respect to paragraph 63.

6    Counsel requests that the PSR be amended to reflect that

7    Mr. Parket's son, Brett Parket, attempted to return the phone

8    call from Officer Hay, to complete an interview.

9          Is there an objection?

10          MS. CHONG:  No, your Honor.

11          THE COURT:  I will recommend that the PSR be amended

12    to reflect that there was an attempt to return that call.  Does

13    that satisfy the defense position?

14          MS. RAHDERT:  Yes.  Thank you.

15          THE COURT:  Paragraph 69, counsel, notes that

16    Mr. Parket's hospitalization at Gracie Square took place in

17    December of 2021, not 2022, and asks that the PSR reflect the

18    accurate date and that the reference to November 31 be changed

19    to November 30th.

20          Does the government agree with these amendments?

21          MS. CHONG:  Yes, your Honor.

22          THE COURT:  In paragraph 70, the defense asks that the

23    PSR be amended to clarify that one of the substances used by

24    Mr. Parket in his suicide attempt was rubbing alcohol, not

25    simply alcohol.  Is that accurate?

O1B5parS

1          MS. RAHDERT:  Yes.

2          THE COURT:  Does the government object to that

3    amendment being made?

4          MS. CHONG:  No, your Honor.

5          THE COURT:  In paragraph 83, defense counsel asserts

6    that the PSR incorrectly reports that Mr. Parket was stationed

7    in California when, in reality, he was on a business trip in

8    California during the September 11, 2001 attack, and asks that

9    the PSR be amended to indicate that he was living in New York

10   at the time.

11         MS. RAHDERT:  Yes.

12         THE COURT:  Is that the substance?

13         Any objection?

14         MS. CHONG:  No objection, your Honor.

15         THE COURT:  And finally, with regard to paragraph 90,

16   counsel asserts that Mr. Parket sold the house on 10 Central

17   Drive -- I don't know where that is.  Where is that?

18         MS. RAHDERT:  It is in Great Neck.

19         THE COURT:  In Great Neck; in October of 2016, and

20   that he sold the house at 7 Fairfield Drive.  Where is that

21   one?

22         MS. RAHDERT:  Also in Great Neck.

23         THE COURT:  In Great Neck; in 1994, and requests that

24   the PSR be amended to make clear that he no longer owns those

25   two properties.

O1B5parS

1              Is that accurate?

2              MS. RAHDERT:  Yes.  Thank you.

3              MS. CHONG:  No objection, your Honor.

4              THE COURT:  So we will indicate in the judgment in

5     this matter that those five corrections should be made.

6              Does that take care of the entirety of any objections

7     or comments by the defense?

8              MS. RAHDERT:  Yes, it does, your Honor.

9              THE COURT:  And there are no last minute objections by

10    the government; right?

11             MS. CHONG:  That's correct, your Honor.  Thank you.

12             THE COURT:  Thank you.  So, with that, then I will

13    make those corrections.

14             I will note that the guidelines calculation in the PSR

15    is consistent with the parties' stipulated guidelines

16    calculation and it is also consistent with the independent

17    calculation that I have done which I will put on the record in

18    a few moments.  So, with the five revisions we have just talked

19    about, the PSR will be made part of the record in this matter,

20    will be filed under seal.  If any appeal is taken, counsel on

21    the appeal may have access to the PSR without the need for any

22    further application to the Court.

23             Ms. Chong, would you wish to be heard?

24             MS. CHONG:  Yes, your Honor.

25             THE COURT:  And I'm open to hearing from the parties,

O1B5parS

by the way, about where during the proceeding you think it is

appropriate for any victims who want to address the Court to be

heard.  My own inclination is they should speak after you, but

I don't know if you have a view on that.

            MS. CHONG:  Yes, your Honor; the government agrees

with the Court.

            THE COURT:  Anything from the defense on the ordering?

            MS. RAHDERT:  That's fine with the defense, your

Honor.

            THE COURT:  That way you will hear what they have to

say, if there is anything you want to say in response before

you speak.

            MS. RAHDERT:  Thank you.  Appreciate that.

            THE COURT:  Ms. Chong.

            MS. CHONG:  Your Honor, may I use the podium?

            THE COURT:  Sure.

            MS. CHONG:  This is an extraordinary and elaborate

fraud perpetrated by a single individual who, by his own

account, had it all -- a happy marriage, close relationship

with his adult children, and a large extended family that

included a loving stepmother, siblings, in-laws.  Jeffrey

Parket also enjoyed a lifetime of financial success as a bond

trader, hedge fund founder, and investor, and amassed millions

of dollars in personal wealth.  But, he lost that fortune.  And

rather than rely on his extensive support network or any of the

O1B5parS

other resources at his disposal, he decided to just fake it.

For five years he maintained his comfortable lifestyle by

deceiving and systematically stealing from, yes, sophisticated

individual and institutional lenders who thought they were

giving short-term loans to a well-established financial

professional.  But that's not all.  He also took millions of

dollars from close friends and family members who trusted him

to responsibly borrow money from them, or in the case of the

family members, to invest their money for them and keep it safe

not only because he is a financial whiz but because he is their

friend, their father, their stepson.

        In his written submission to the Court the defendant

professes remorse for his actions but he also insists that he

should not spend a single day behind bars.  And to support that

position, he makes two arguments that I expect the defense will

make again today.  Neither of these arguments has any merits.

First, he argues that the guidelines range of 121 to 151 months

is just too high because it was mostly calculated, as these

ranges are in fraud cases, using the large loss amount in this

case.

        Second, he argues that no prison time is warranted

under the Section 3553(a) factors.  I think the Court can

easily reject both of these arguments based on the specific and

truly egregious facts of this case.

        The defendant has devoted pages to arguing that the

O1B5parS

1    Sentencing Guidelines focus unduly on the amount of loss.  The

2    government is familiar with the Second Circuit's case law on

3    this point and of course this Court is familiar with those

4    arguments.  But I think what matters here is that even if there

5    are fraud cases out there for which an argument could be made

6    that the guidelines range unduly focuses on the loss amount,

7    this is just not that case.  Even if this Court were to largely

8    set aside the loss amount, many other factors weigh strongly in

9    favor of the decade-plus sentence set out in the guidelines

10   range and those are, of course, the factors in Section 3553(a).

11        First, the nature and circumstance of the offense

12   stand out for their egregiousness starting with the length, the

13   scale, and the elaborateness of the fraud.  This is a defendant

14   who carefully constructed and methodically perpetrated his

15   Ponzi-like fraud for five years, lying to at least two dozen

16   lenders to abstain an astonishing $65 million in loans which he

17   paid back in increments by ensnaring more victims in his

18   scheme.  All told, 17 of his victims lost a total of

19   $37 million.

20        I want to specifically address how it was that he was

21   able to pull this off for so long, and that is really the story

22   of the intricate nature of the fraud.

23        Unsurprisingly, the defendant was able to steal from

24   close family members through fairly simple means:  By lying

25   about his assets and lying about what he was going to do with

O1B5parS

1    their money.  But many of his victims were not family members,

2    they are sophisticated financial actors who did their due

3    diligence.  They consulted lawyers, they required extensive

4    proof of collateral before giving the defendant a dime.  That

5    means the defendant needed to construct a mountain of extremely

6    detailed and believable paperwork.  In fact, he had to provide

7    more than that because a key part of the defendant's story for

8    why he needed loans, despite being personally extremely

9    wealthy, was his claim that most of his assets were restricted

10   or illiquid and could not be easily accessed without, for

11   example, significant penalties.

12           This Court will hear today from one victim whom I will

13   refer to as Victim 1, who despite a close professional

14   connection to the defendant, insisted that the defendant

15   provide all of the corroboration necessary to show that any

16   loan would be secure.  So the defendant did not just provide

17   elaborate paperwork, he claimed he would put the victim in

18   touch with business executives who would vouch for the

19   defendant's investments and the circumstances of their

20   illiquidity.  What the defendant did instead was steal the

21   identities of three real corporate executives and impersonate

22   them by e-mail and phone.

23           I will move on here to the history and characteristics

24   of this defendant and why they favor a guideline sentence.

25           Now, it is true the defendant has no criminal history

O1B5parS

1    and it is true that he confessed to his crimes.  The government

2    agrees that the Court should consider those things in imposing

3    a sentence.  But I think what is more relevant here and more

4    revealing of his characteristics over the long-term, the kind

5    of person Jeffrey Parket is, is the fact that he only confessed

6    after perpetrating this fraud for an astonishing five years and

7    after losing almost all of the money he had borrowed.  And just

8    to be clear, because of how the defendant structured this

9    fraud, because it was a fraud he perpetrated against not

10   strangers over the internet but people he knew intimately,

11   these were loans he took out in his own legal name.  For those

12   reasons, his confession was in fact utterly unnecessary to

13   prosecute this case.  Indeed, as this Court knows, the

14   government opened the case, spoke to multiple victims and

15   collected evidence of the defendant's guilt, before speaking

16   with him.

17          Quite creatively, the defendant also argues that he

18   should be sentenced as if he is a government cooperator because

19   of that confession to his crimes and because he has also

20   separately filed whistle-blower suits identifying the

21   misconduct of others.  My understanding is he is also committed

22   to filing more whistle-blower suits if he can.

23          The government could not disagree more with the notion

24   that the whistle-blower efforts that the defendant is making

25   somehow entitle him to a lesser sentence.  As a starting matter

O1B5parS

on this question of whether the defendant should be considered

an informal cooperator, signing up the defendant as a

cooperator was never on the table because as a one-man fraud

mastermind, the only person he could have given information

against was himself.  But more importantly, as to the

whistle-blower arguments, I think the defendant has it exactly

backward.  The Court should consider the defendant's work on

whistle-blower cases which, yes, the defendant says he is

pursuing to try to repay his victims with the millions that he

hopes to get in whistle-blower awards, but even if those awards

in fact came down tomorrow and totally covered the victims'

financial loss, that would mean that the defendant absolutely

had alternatives to the fraud that he perpetrated.  If the

whistle-blower filings are successful, in fact what they show

is that the defendant, as an educated and experienced financial

professional, had skills that he could tap, he had analytical

abilities that most people probably only dream of, he had

alternatives to whatever desperate personal financial situation

he found himself in.  Instead, he chose to do the unthinkable.

Not a mistake, but five years of decisions.

          And that brings me to the other Section 3553(a) facts.

          THE COURT:  Before you leave the whistle-blower suits

can I ask you, have you been in touch at all with -- I

understand these are largely in coordination with the Eastern

District; right?  Not here?

O1B5parS

1          MS. CHONG:  My understanding is that the Eastern

2     District of New York was interested in at least one case.

3          THE COURT:  Have you been in touch with any of the

4     other U.S. Attorney offices with respect to these

5     whistle-blower cases?

6          MS. CHONG:  No, your Honor, and the government has

7     chosen not to interact with the SEC on possible whistle-blower

8     matters.  I spoke with a prosecutor on an Eastern District of

9     New York case and he made very clear that he was not asking the

10     government to do anything in particular and he was not seeking

11     in any way to influence the sentencing in this case.

12          THE COURT:  I do note for the record that there are no

13     submissions by any other government authorities or prosecutors

14     or SEC officials in connection with those suits.  Right?  Am I

15     correct about that?

16          MS. CHONG:  That's correct, your Honor.

17          THE COURT:  OK.

18          MS. CHONG:  Just one more point on the whistle-blower

19     suits, your Honor.  I think it would be particularly disturbing

20     if an individual, who is capable of filing rigorous and perhaps

21     meritorious whistle-blower suits, was awarded for choosing not

22     to use those skills and, frankly, uses those skills now after

23     the fraud, as a get-out-of-jail-free card.  I think that that

24     is not how justice works and the defendant does need to

25     understand that.  I think that's what brings me to the other

O1B5parS

Section 3553(a) factors, which is the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide a just punishment, and to deter other further crimes.

For all of the reasons stated, the guidelines range is appropriate to accomplish these goals, and the seriousness of the offense goes well beyond the huge amount of money that the defendant took from so many victims.  Here, I think it's important to emphasize, that when thinking about the seriousness of the defendant and the importance of promoting respect for the law, we need to consider how the defendant executed his crimes and his relationships with the people he betrayed.  This is not a defendant who stole money from people and institutions he felt could afford the loss.  In fact, the defendant defrauded family, friends, and colleagues repeatedly, and thereby ensured maximum harm to those individuals because part of his strategy was to target people in his orbit whose financial circumstances were sometimes known to him.  He cannot claim he did not know how his fraud would affect them.

This Court will hear today from a victim whom I will refer to as Victim 9, who will describe in trusting the defendant to help manage her financial accounts only to learn that instead of helping her, he systematically helped himself to her money.

Another victim, whom I will refer to as Victim 1, will

O1B5parS

 1    describe losing a lifetime of labor to the defendant's

 2    deception, and that is specifically because the defendant

 3    didn't just take one big loan from that victim and walk away.

 4    He went back to the same well over and over using elaborate

 5    ruses to pressure the victim to issue additional loans.  He did

 6    that despite knowing full well that by utterly devastating this

 7    victim, by squeezing this victim dry, he would leave the victim

 8    unable to support his dependents or pay his family's medical

 9    bills.  That is all relevant in considering what kind of

10    sentence would truly reflect the seriousness of this offense.

11    In a word, it is the premeditated cruelty in how the defendant

12    executed his scheme.

13          Lastly, a guideline sentence is needed to deter the

14    defendant from future crimes but, just as importantly, to send

15    a message to others like him who would consider choosing to

16    destroy others so that they can live in comfort and

17    convenience.

18          Now, I think deterrence is of course always an

19    important goal of sentencing but I want to suggest it is

20    particularly important in this case where the harm cannot be

21    measured in monetary loss alone.  By deliberately exploiting

22    his personal relationships and leveraging his unique

23    professional skill set to obtain these loans, the defendant

24    exposed his victims to enormous and lasting emotional and

25    mental harm.  This harm was not done at simply the individual

O1B5parS

1    or interpersonal level, though that would be terrible enough.

2    The defendant's fraud actually undermined the basic trust that

3    is so essential to the functioning of our financial system.

4            To explain what I mean I would like to point to one of

5    the victims, a specialty finance company whose representative

6    could not be here today.  This representative submitted a

7    letter to the Court explaining, in heartbreaking detail, that

8    the millions the defendant took, consist largely of the careful

9    investments and life savings of hard-working individuals and

10   small family offices in the midwest.  These are people who

11   never met Jeffrey Parket and who sought to simply responsibly

12   invest their money through a company they believed in, a

13   company that had worked to build its reputation for almost two

14   decades.  The defendant's fraud is a blow to this entire

15   intricate system, this web of hard work, smart investment, and

16   institutional safety that allows us to invest our money, to

17   hope it will grow, to dream about a future.

18           The defendant is absolutely deserving of a sentence

19   within the guidelines range.

20           Thank you, your Honor.

21           THE COURT:  Thank you.

22           At this time I am prepared to hear from the victims.

23   Now, as I understand it, Ms. Chong, we have three victims then

24   who are present today and wish to be heard.  We have the fourth

25   who originally had planned to be heard today and wasn't able to

O1B5parS

1    make it; you submitted a written statement.  I don't think

2    there is a need for that to be read aloud in court.  I had it

3    in written form and now I have the additional submission that

4    you made last night.  I have read it carefully.

5              The defense does have that one as well, right?

6              MS. RAHDERT:  Yes, your Honor.

7              THE COURT:  So we have three victims who wish to be

8    heard today.

9              MS. CHONG:  Yes, your Honor.

10             THE COURT:  All right.  So you have referred to them

11   as I understand it as Victims 1, 9, and 11?

12             MS. CHONG:  That's correct, your Honor.

13             THE COURT:  OK.  So Victim 1?  I thank all of you for

14   being here.

15             VICTIM 1:  Your Honor, I want to thank the Court for

16   this opportunity to say something about the impact Jeffrey's

17   crimes have had on me personally and, more importantly, on my

18   family.

19             I spent many painful hours drafting the very detailed

20   impact statement submitted to the Court almost six months ago,

21   so today I will be brief if only to spare my family any further

22   shame and to not overshadow the content of my written statement

23   that I spent so much time on.

24             THE COURT:  Let me just interrupt you to assure you

25   and everybody else, I have very carefully read all of those

O1B5parS

statements.

VICTIM 1:  Thank you, your Honor.

THE COURT:  And I appreciate the time that you took.

VICTIM 1:  It is also very hard for me, your Honor, to stand up here as a victim.  That's not how I have ever thought of myself.  I am embarrassed and ashamed that Jeffrey has turned me into one.  And what he has taken from me is so much more than just financial.  It's true, Jeffrey stole an enormous amount of money from me, money that I earned over a lifetime of 70 and 80-hour workweeks, money that I earned to provide for my three children, elderly parents, and for my entire extended family.  Yes, he took all of that.  But he took so much more.

Jeffrey robbed me of my ability to trust those I consider friends.  This is a man I had known for over 20 years, someone I thought of as a mentor, as family.  He robbed me of my belief in myself.  How foolish must I be to have trusted this person?  It has affected my ability to function with the confidence I have had for years at my work.  It has affected the way I carry myself with my wife and my children because I felt such shame at jeopardizing their well being.  It has infected every aspect of my life.  I have not had a single good night's sleep in the two years since I realized what Jeffrey had done to me.  My head spins when I think that now I work to support and take care of my family.  I can tell you, I work not to support and take care of my family, but rather to pay off

O1B5parS

1  debt I incurred to finance Jeffrey's scheme and lavish

2  lifestyle of his own family.

3          My stomach turns when I think of the image of me in my

4  office until all hours of the night away from my family,

5  earning money to support them, while Jeffrey sat at home

6  unemployed, putting together fake bank statements, and forging

7  signatures of executives of public companies to steal my money.

8          My heart breaks when I see my parents scared about the

9  future of their care.

10          My eyes well up any time I have to deny my children

11  anything because of what he did to me and to them.

12          Your Honor, Jeffrey stole my peace of mind.  In a

13  word, he has left me completely empty.

14          Since I have submitted my written statement I have had

15  the chance to read Jeffrey's letter to the Court and I have

16  seen him pass his crime off as a mistake, a one-off lapse in

17  judgment.  He talks about how sorry he is.  Your Honor, I have

18  been down this road before and I can tell the Court from my own

19  pain and my own experience that this is just the next step from

20  the same con that Jeffrey has been committing for five years.

21          Please remember, your Honor, that this is not one

22  incident, one bad decision, one lie that he told in order to

23  steal from faceless investors in some public company.  This is

24  a man who stole from his own mother, from his brothers, from

25  his best friends, from the people who had spent a lifetime

O1B5parS

caring for him, trusting him, supporting him.  This is not a
fraud that involved one false statement or one phony document.
Jeffrey stole from us by telling lie upon lie, for month after
month, year after year, by creating hundreds of false
documents, by forging people's signatures including his elderly
aunt and mother, pretending to be corporate executives at
public companies, so that he could give himself references for
me.

My mind reels when I think of the lengths he went to
in order to steal money from me and my family.  It has
literally made me physically ill thinking about how I financed
his ability to take advantage of the good faith of his other
victims and their willingness to help him.

Your Honor, as Jeffrey's largest victim by far, I have
put tremendous pressure on myself these past two years in
connection with my written impact statement and in addressing
you today.  How am I going to show you who this man really is?
The evil, the conceit, the smugness.  But, in his letter to the
Court, he made it easy.  He showed you for himself.  In his
letter, Jeffrey talks about how he is going to pay all of us
back, how he is going to fix things.  He says he is working as
a whistle-blower and that is because he is feeling true
contrition.  I know this is a lie.

Shortly after I realized Jeffrey had stolen everything
from me, while I was absorbing the enormity of the situation

O1B5parS

and before I first spoke with prosecutors, I received a call
from Jeffrey's first lawyer.  He told me that Jeffrey was going
to earn a fortune as a whistle-blower and that if I didn't turn
Jeffrey in to the authorities, he would use that money to pay
me back.  Indeed, two weeks ago, during the holidays, Jeffrey
had the audacity to direct his lawyer to harass me during the
holidays with my family and tell me that it was in my best
interest to ask the Court to help him with his whistle-blower
case.  I couldn't believe it then and it is even more difficult
to believe it now.  Jeffrey was trying to buy my silence and my
cooperation now with this nonsense about whistle-blower money.
And when I read Jeffrey's letter to the Court, I saw that
because that didn't work, he is now trying to buy his way out
of prison with the same false promise to you.

        Jeffrey is an imposter and a failure, that is what he
has been for 20 years, and now he is trying a new scheme, a new
role as some kind of whistle-blower to stay out of jail based
upon things that he has read in the newspaper.  It would be
funny if it were not so serious and the stakes were not so
high.  He must be stopped.  You see, your Honor, none of this
is about remorse or about feeling sorry for the people he has
hurt, it is about Jeffrey trying to advance his own interests
by lying to everyone else about what he is going to do for
them.

        I thank the Court for listening to me today and I

O1B5parS

1    thank all the people standing behind me who came to support me

2    today and at all the prior hearings.  I thank the prosecutor

3    and the inspectors for prosecuting this case so well.  And I

4    thank your Honor for holding Jeffrey to account with the

5    maximum sentence for what he has done, for the harm that he has

6    caused to me and my family and so many others.  I beg you to

7    deliver justice today.

8              THE COURT:  Thank you, sir.

9              Victim 9; Ms. Chong, is that the next person?

10             MS. CHONG:  Yes, your Honor; Victim 9.

11             THE COURT:  Can you give me one second, please?

12             (Pause)

13             THE COURT:  Ma'am, I am sorry.  Thank you.

14             VICTIM 9:  Your Honor, I, too, have given you a very

15    detailed victim impact statement and today I am just going to

16    say a few brief things.

17             I am Jeffrey Parket's stepmother and have raised him

18    like my own child from the time he was 16 years old.  As you

19    know, I have submitted a detailed victim impact statement and

20    want to reiterate a few key points about how Jeffrey's

21    unconscionable and manipulative fraud affected myself and my

22    family.

23             I had been blessed with remarkably good health my

24    entire life until Jeffrey's crimes were revealed.  Since then,

25    my health has been severely impacted.  I can never get back the

O1B5parS

years that I have lost due to health issues, nor can I look

forward to the same quality of time and experiences I could

have had in future years.

My husband of 38 years, Jeffrey's father, passed away

in May 2018.  He grew up in foster homes for most of his

childhood.

THE COURT:  You are talking about your husband now;

right?

VICTIM 9:  My husband.

THE COURT:  Yes.

VICTIM 9:  And he was faced with unimaginable

obstacles.  Through education, honesty, and hard work, he built

a secure life for his family and focused on imparting his

values to his children.  To think that Jeffrey would have

stolen from his father is simply incomprehensible.  Our family

has been severed.  I am separated from Jeffrey's family.  The

loss of my three grandsons is a loss that I grieve every day.

As with many of his victims, the financial impact of

Jeffrey's crimes on my life has been devastating.  Jeffrey's

father worked so hard as a college and graduate school

professor to save a nest egg for me as he was older than I.

Jeffrey manipulated to steal these assets and has left me in a

very difficult position.  I have to move out of my apartment

and find housing in a vastly different price range.  Not only

did he steal from me but from his sister and brother and future

O1B5parS

generations who ultimately would have benefited.

As one can imagine, friendships in Great Neck, Florida, and now New York City, have been compromised.  It is humiliating to have a family member who has pled guilty to criminal charges.  I cannot explain Jeffrey's reason for committing these crimes to those who frequently ask, nor do I want to talk about it.  I experience emotional stress and feel stigmatized.  As a result, I avoid people whose company I used to enjoy and destinations that I used to frequent.

In summary, I am suffering severe physical pain without a diagnosis and cure.  I have lost relationships with loved ones and friends.  My financial security has been significantly impacted.  I fear for my future.  My sleepless nights are unending.  I do not know what I am going to do.

Jeffrey has destroyed my life as well as the lives of others.  Jeffrey defrauded all of us who loved and respected him.  And why?  So he could live an extraordinarily opulent lifestyle?  Even if he was down on his luck, his worst case lifestyle is so much better than most people could ever dream of.  His crimes were pointless and selfish and knowingly perpetrated through extraordinarily calculated manipulations.  I believe he should pay for his crimes and be sentenced to the maximum extent permitted by law.

Thank you.

THE COURT:  Thank you.  Thank you for being here.

O1B5parS

1          VICTIM 9:  Thank you.

2          THE COURT:  Victim 11; is that correct, Ms. Chong.

3          MS. CHONG:  Yes, your Honor; Victim 11.

4          THE COURT:  Thank you.

5          Good afternoon, sir.

6          VICTIM 11:  Good afternoon, your Honor.  I have also

7    submitted a victim statement and I believe that you have read

8    it so I have a short brief comment to state today.

9          I have known Mr. Parket for over 10 years and have

10   become very close friends with him over that time.  At the same

11   time, I am one of the victims of his crimes, and with the

12   exception of his recent actions, he has been the one person who

13   has always helped everyone.  I cannot express or put into words

14   how much he has guided myself and my family over the years.

15         As a victim, everyone's natural reaction is

16   punishment.  However, my priority as a victim is to recover the

17   money that I have lost.  The amount of loss may not be large

18   compared to some corporations, funds, or wealthy individuals,

19   but it is certainly very significant to me.

20         Since Mr. Parket's arrest I know he has been working

21   day and night to try to repay his victims.  I believe the Court

22   is aware of Mr. Parket's efforts with the government agencies

23   which hopefully has the real possibility to earn enough money

24   to make full or partial, at least substantial restitution to

25   his victims.  Incarceration in this case could prevent

O1B5parS

1    Mr. Parket's work and prohibit or hinder his efforts to pay

2    back his victims.  I understand this is a unique situation but

3    I would implore the Court to prioritize and consider victims'

4    recovery as a priority in any sentence here.

5              Thank you.

6              THE COURT:  Thank you, sir.

7              I will note again that I do have the written statement

8    from the Victim 16, both in its original form and then what was

9    submitted last night, which as I say, I don't think there is a

10   need to read aloud.  I have carefully read it along with each

11   of the victim impact statements.

12             So, at this time does counsel for the defense wish to

13   be heard?

14             MS. RAHDERT:  Yes, your Honor.  May we confer very

15   briefly before being heard?

16             THE COURT:  Yes, you may.  Before you do, actually --

17   and then we will take a brief break.  Do you need a break?

18             MS. RAHDERT:  No, I don't need a break, just a moment

19   to confer.  Thank you for asking.

20             THE COURT:  I want to raise one issue.  What I was

21   looking for, and I apologize, I didn't mean to keep people

22   waiting to address the Court so I apologize to you, but was

23   there a condition of release that Mr. Parket not be in touch

24   with his victims?

25             MS. CHONG:  There was not, your Honor, in part because

O1B5parS

 1    of the fact that many of his victims are actually close friends

 2    and family members so that did pose difficulty.  That said,

 3    when victims informed the Court, the government then confirmed

 4    with defense counsel that no further contact should be made as

 5    with the victim in this case who mentioned the issue.

 6            THE COURT:  All right.  Do you want to recess for your

 7    time?

 8            MS. RAHDERT:  Yes; maybe a five-minute recess, your

 9    Honor, if that's acceptable?

10            THE COURT:  We will take a brief recess then.  Let my

11    Court deputy know when you are ready.

12            MS. RAHDERT:  Thank you.  We will.

13            (Recess)

14            THE COURT:  Ms. Rahdert, are you going to address the

15    Court?

16            MS. RAHDERT:  Yes, your Honor.  May I do so from the

17    podium?

18            THE COURT:  Of course.  Sure.

19            MS. RAHDERT:  Thank you.

20            Good afternoon again, your Honor.

21            THE COURT:  Good afternoon.

22            MS. RAHDERT:  Before I begin my remarks, I would like

23    to briefly introduce those are who are in the courtroom to

24    support Mr. Parket, with the Court's permission.

25            THE COURT:  Sure.

O1B5parS

1          MS. RAHDERT:  First, I want to note Tony Bosco, who is

2     here who submitted a letter in support of Mr. Parket, one of

3     Mr. Parket's close friends and victim; Victim 11, from whom the

4     Court just heard and chooses to proceed anonymously today is

5     here and also wrote a letter of support for Mr. Parket; and

6     then Evan Stern, one of Mr. Parket's therapists, is here as

7     well.  And I just wanted to note that Mr. Parket's sister,

8     Allison Berman, had an unavoidable conflict and wanted to be

9     here but unfortunately could not.

10          THE COURT:  I do have a letter from her, though, which

11     obviously reflected a great deal of thought and reflection on

12     her part as well.

13          MS. RAHDERT:  Thank you, your Honor.

14          And finally, in a similar boat, is Mr. Parket's son

15     who also submitted a letter for him --

16          THE COURT:  Yes.

17          MS. RAHDERT:  -- who really did want to be here but,

18     unfortunately, had an unavoidable conflict as well.

19          THE COURT:  Thank you.  Thank you, all, for being

20     here.

21          MS. RAHDERT:  Thank you, your Honor.

22          We are asking for a sentence of time-served and a term

23     of supervised release to include a significant term of home

24     detention.  We recognize that given the gravely serious nature

25     of the offense and high guidelines range this is an unusual

O1B5parS

| | |
|---|---|
| 1 | request that may even seem extraordinary, but we make this |
| 2 | request with one thing in mind and one thing only:  Allowing |
| 3 | Mr. Parket to pay full restitution to his victims, with |
| 4 | interest. |
| 5 | As the Court well knows, Mr. Parket has been |
| 6 | singularly focused on repaying his victims via a series of |
| 7 | whistle-blower cases filed with the SEC and in one private |
| 8 | civil action.  In short, the Court can see his remorse not just |
| 9 | through his words but through his actions since confessing his |
| 10 | crime. |
| 11 | For the past two years he has lived in a series of |
| 12 | cheap, temporary apartments paid for by his son, subsisting on |
| 13 | a few dollars a day, and recently even relying on food banks |
| 14 | for assistance.  During that time he has engaged in |
| 15 | extraordinary, and in our experience, even unprecedented |
| 16 | efforts to pursue whistle-blower cases to pay restitution.  His |
| 17 | tireless work on these cases, along with their likelihood of |
| 18 | success which I will discuss in more detail in a moment, truly |
| 19 | set him apart from virtually all other fraud defendants.  But, |
| 20 | his ability to pursue these cases to the finish line depends on |
| 21 | him being able to access the internet and file additional |
| 22 | submissions, which he simply cannot do if he is incarcerated. |
| 23 | THE COURT:  Counsel, they have internet in prison and |
| 24 | he is represented by counsel, is he not? |
| 25 | MS. RAHDERT:  Your Honor, the internet access in |

O1B5parS

1    prison is extremely limited.  My understanding is that it is

2    limited to a sort of basic e-mail program called CorrLinks

3    where you can send limited, text only e-mails to lawyers and

4    people on the outside.  And, he has counsel on several of the

5    cases but there are cases where he is pro se -- representing

6    himself -- with the SEC.

7            Now, I want to go into the whistle-blower process in a

8    little bit more detail.  I know your Honor has reviewed the

9    submissions carefully, of course, but Mr. Parket wants his

10   victims who are here to be aware of the efforts that he has

11   made and the very real possibility that they may be repaid.

12   Obviously, although he is constrained by certain

13   confidentiality issues in what he is able to share --

14           THE COURT:  And he also can't make representations to

15   people.

16           MS. RAHDERT:  I'm sorry, your Honor?

17           THE COURT:  He cannot make representations to his

18   victims.

19           MS. RAHDERT:  Understood, your Honor.  And I was

20   planning to address that at the end of my presentation but I am

21   happy to do so now, if the Court would prefer.

22           Essentially, in short, Mr. Parket instructed a lawyer

23   of his on one of the civil matters of the whistle-blower cases

24   to communicate with counsel for one of the victims to try to

25   share more information about the whistle-blower cases with

O1B5parS

1    counsel for the victim and was told that that victim was not

2    interested in more information.  It was a lawyer-to-lawyer

3    communication and it was motivated by the same desire that

4    motivates my comments today in terms of sharing information

5    with the victims about these cases which are very substantive

6    and legitimate.

7            As I said, he wants to make sure his victims know

8    about and understand as much as they are able to, consistent

9    with this confidentiality obligations to the SEC and other

10   regulators.

11           In short, after he hit rock bottom in late 2021

12   Mr. Parket searched for a way to try to make things as right as

13   he could by searching for a way to pay restitution.  He

14   discovered the SEC whistle-blower program which awards

15   qualifying whistle-blowers with between 10 and 30 percent of

16   the judgment that the SEC collects based on the information

17   that the whistle-blower provides.  The vast majority of awards

18   are at or close to that 30 percent level.

19           THE COURT:  If the lawsuits succeed.

20           MS. RAHDERT:  Correct, if the lawsuits succeed, your

21   Honor.

22           He embarked on a massive effort to root out financial

23   wrongdoing across the industry and he scoured thousands of

24   public filings and pieced together numerous likely violations

25   of securities laws.  It was a very robust effort that he

O1B5parS

1    undertook.  The immense effort has turned paying a $38 million

2    restitution judgment, which at first sounds like a total

3    fantasy, candidly, into a realistic possibility.

4           He has filed five cases with the SEC which include 29

5    supplemental submissions, two of which he submitted only just

6    within the last week.  They allege more than $12 billion in

7    wrongdoing across the various cases.  These submissions are

8    supported by approximately 4,000 documents.  The five

9    whistle-blower cases also consist of more than 850 pages of

10   filings including more than 125 Excel spreadsheets.  They

11   reflect the review and careful analysis, as I said, of more

12   than 15,000 documents, some of which are voluminous public SEC

13   filings.  They contain sophisticated claims of wrongdoing by

14   others including very large corporations and hedge funds which,

15   if the SEC does pursue cases to judgment, would have the

16   ability to pay large judgments, if such judgments are entered

17   against them.  One of the whistle-blower matters has also led

18   to a private civil claim that Mr. Parket is pursuing with

19   retained counsel who is, of course, retained on a contingency

20   basis.

21          I want to highlight the letters from the attorneys on

22   these matters that we have filed under seal.

23          THE COURT:  I have read them.

24          MS. RAHDERT:  Understood, your Honor.  I emphasize

25   that these letters indicate that these are real and substantial

O1B5parS

1    efforts that have a good likelihood of success down the line.

2              Indeed, his work has already produced very promising

3    results in terms of indication of governmental interest in

4    those cases.  I know your Honor pointed out during the

5    government's presentation that there are no submissions from

6    regulators in our sentencing package and I want to note that

7    the fact remains that Mr. Parket is in fairly consistent

8    communication with the SEC and attorneys for the SEC about his

9    allegations, he has had several meetings with them and with

10   prosecutors in the Eastern District of New York, as your Honor

11   has also noted, and the fact is that the SEC has also filed

12   cases publicly indicating that it could be using the

13   information that Mr. Parket is providing.  Further, these SEC

14   investigations are themselves, as we know, confidential, and

15   that includes confidentiality vis-à-vis Mr. Parket.  The SEC is

16   not telling Mr. Parket every step of the way its investigation.

17   He doesn't know exactly how and when they're using his

18   information because it is sort of a one-way street in terms of

19   sharing information, if that makes sense.

20              And we also, finally, did not request letters from

21   regulators in support of Mr. Parket's sentencing package and

22   the reason we did not request such letters is that the purpose

23   of Mr. Parket's whistle-blower efforts is not to try to

24   necessarily influence the Court via letter from regulators, it

25   is to show and demonstrate that he has a real and concrete plan

O1B5parS

1    to pay restitution and is incredibly devoted to that plan.

2    Without getting into the confidential details, of course, as we

3    explain in our submission, there actually is good reason to

4    believe that the SEC is actively pursuing these cases.

5            In addition to what I have already said, the EDNY was

6    expressed interest in three cases and the SEC in four of them.

7    And, again, we did not ask them for letters in support of his

8    sentencing package.

9            Because of the scope of wrongdoing uncovered, if the

10   cases are successful, Mr. Parket could be in a position to pay

11   his restitution in full.  Of course, as your Honor noted, that

12   depends on those cases being prosecuted or enforced to

13   conclusion.  The success of his claims depends on his ability

14   to continue that work in numerous ways.  For example,

15   Mr. Parket proactively monitors SEC actions related to entities

16   that he is accused of wrongdoing.  He then will reach out to

17   the SEC personally, and every time a party is publicly charged,

18   to make sure that the SEC knows about the additional wrongdoing

19   that he personally has identified through his analysis, even if

20   it is unrelated to the charges that the SEC filed against that

21   entity.  He won't be able to monitor for those investments and

22   conduct that outreach from prison.

23           He also --

24           THE COURT:  Again, he is represented by counsel in

25   many of those cases.  He certainly can do that.

O1B5parS

1          MS. RAHDERT:  Understood, your Honor, he is

2     represented by counsel in some cases, and I note that although

3     he is represented by counsel, Mr. Parket's personal effort is

4     critical to the success of these claims because of the sheer

5     number of entities that he has accused of wrongdoing.  I think

6     it is approximately 400 entities that are involved in his

7     whistle-blower cases, some of whom change their names at

8     different times and it is very difficult to get your arms

9     around all of the activity related to these entities.  Although

10    his counsel on those cases is quite capable and has invested a

11    lot of time, Mr. Parket's personal efforts are essential to

12    making sure that all 400 of those names are monitored on a

13    regular basis.

14         He also continues to bolster his whistle-blower cases

15    by filing supplemental submissions that we have alluded to.

16    Those submissions are really important because they keep the

17    cases top of mind for the SEC.  And, the more information that

18    he provides in supplemental submissions the more likely the SEC

19    is to value his assistance and give him a higher percentage of

20    the ultimate judgment because there is that 10 to 30 percent

21    range and my understanding is that one factor considered is the

22    amount of assistance provided by the whistle-blower.

23         This activity is critical to his success and, again,

24    something that he would not be able to do if incarcerated.  Not

25    only that, but if and when the SEC does obtain a qualifying

O1B5parS

judgment, the SEC will post what is called a notice of covered action and Mr. Parket will have to go online and monitor for notices of covered actions so he can apply for an award within 90 days of the publication of that notice.  If he does not apply for that award within 90 days, then he does not collect anything as a whistle-blower.

And to your Honor's point, even in cases where he is represented by counsel, because of the sheer number of entities involved here, monitoring for notices of covered actions is a very difficult task that really requires Mr. Parket's persistent and sometime intensive effort.  This means that if he is incarcerated, it is just unlikely that the victims will be repaid.  That's the bottom line here.  And given that his incredible effort and the likelihood of successfully paying victims back, in whole or even in extremely large part, we submit that the 3553(a) factor of the need to provide restitution to the victims should be weighed very heavily in the Court's sentencing determination today.  That factor favors a sentence that allows him to continue this work and make his victims whole financially.  Courts rely on that factor in imposing non-custodial sentences where the facts support that outcome and, as we submit they do here.  Indeed, Victim 11 wrote in his victim impact statement that the most important thing to him is being repaid and he said that again to the Court today.

O1B5parS

1          THE COURT:  He spoke to me earlier, yes.

2          MS. RAHDERT:  Of course.  That victim, therefore, asks

3     the Court to sentence Mr. Parket in a way that permits him to

4     continue that work.

5          And I also want to note, in addition to paying

6     restitution to the victims, the whistle-blower process serves

7     another important purpose for Mr. Parket.  He seeks to atone

8     for his offenses by assisting the government in rooting out

9     financial frauds and helping other victims of wrongdoing, that

10     is, victims of the wrongdoing that he alleges in the

11     whistle-blower cases which, of course, had nothing to do with

12     his offense and he was not involved in any of those

13     allegations.  It shows his remorse and desire to pay his debt

14     to society, albeit in a unique way.

15          Although Mr. Parket's efforts to repay his victims are

16     the principal reason for the sentence that we request, I want

17     to spend just a couple of minutes on other 3553(a) factors that

18     we hope the Court considers.

19          Mr. Parket's voluntary, full, and thorough confession,

20     without any proffer agreement or protections of any kind, is

21     another extraordinary aspect of Mr. Parket's post-offense

22     conduct that should be recognized in the Court's sentence

23     today.

24          After Mr. Parket attempted --

25          THE COURT:  Did he ask for a cooperation letter?  5K

O1B5parS

1    letter?

2            MS. RAHDERT:  I am not aware of him ever asking for a

3    cooperation letter, no.

4            THE COURT:  And he doesn't have one.

5            MS. RAHDERT:  Correct.

6            After he attempted suicide in 2021, Mr. Parket hired a

7    lawyer and contacted federal prosecutors to make a full

8    confession.  When he first contacted the Eastern District of

9    New York, he did not know that SDNY had already started an

10    investigation.  As far as he knew there was no criminal

11    authority interested in his conduct.  Whether the SDNY had

12    already been contacted by victims, therefore, does not

13    undermine the importance of Mr. Parket's confession which he

14    sought to give before he knew he was in criminal jeopardy.  The

15    point is what was in his head at that time, and in his mind he

16    did not know that he was under investigation.  He then

17    cooperated extensively in his own prosecution by preparing a

18    written narrative of his offense and assisting with calculating

19    his restitution obligation, which is a complicated effort,

20    given the nature of the offense.

21            We ask the Court to recognize his cooperation in his

22    own case and in the whistle-blower cases in imposing sentence

23    even though, as your Honor notes and as the government noted,

24    he was never a formal 5K cooperator.  We are not saying he

25    should be treated as such.  We are saying that he shares

O1B5parS

characteristics with cooperators that are valuable and are

important in considering 3553(a) factors and support the

sentence that we request today.

The government, in its submission and in its comments

today, undervalues the importance of his confession when it

asks for a guideline sentence.  Mr. Parket confessed, as I

mentioned, because he could no longer live with all of the lies

that he told.  He felt shame, remorse, and as the Court knows,

deep depression, and wanted to make things right.  The

government mischaracterizes his confession as self-serving

without any factual basis, and the government asserts that his

confession was unnecessary but, of course, the point is that

Mr. Parket did not know that.  He did not know that the

government was investigating him at the time.

I also note that the government told the Probation

Office that Mr. Parket did provide substantial assistance in

his own prosecution by preparing documents and assisting with

the restitution calculation so that assistance we hope will be

noted by the Court in his sentence.  Not only that, but SDNY

has made it clear that in the corporate context, at least, that

voluntarily disclosing wrongdoing merits charging and

sentencing leniency in its corporate voluntary disclosure

policy.  In fact, just yesterday the SDNY announced a new

policy permitting individual whistle-blowers who cooperate and

identify certain types of corporate criminal misconduct and

O1B5parS

1   public corruption, to obtain non-prosecution agreements.  In

2   announcing that policy, SDNY emphasized the importance of

3   incentivizing self-disclosure.  Your Honor should, therefore,

4   weigh Mr. Parket's voluntary confession heavily in your

5   sentencing decision.

6         I note that the government highlighted general

7   deterrence as a factor that is important here.  in addition to

8   considering general deterrence I think it is important to send

9   a message that self-disclosure and voluntary confessions will

10  be considered in sentences and will be factored in as a reason

11  for a downward variance to incentivize others to engage in

12  similar post-offense conduct in the future, which we understand

13  is the purpose of the newly enacted policy in SDNY, or at least

14  one purpose of it.

15        Next, I want to briefly touch on just two additional

16  3553 factors that are really important here.  The first one is

17  the need for adequate mental health treatment.  As the Court

18  knows, in detail, Mr. Parket's mental health challenges have

19  been well-documented here, beginning with his suicide attempt

20  in the winter of 2021.  Since then he has received robust

21  mental health treatment which has been essential to his

22  survival, really.  He sees three different therapists, one of

23  whom he speaks with three times a week.  He will not have

24  access to that level of treatment or perhaps any treatment at

25  all in Bureau of Prisons custody.  Courts regularly consider

O1B5parS

1    this issue in imposing downward variances in sentences.

2            Finally, I want to say a few words about Mr. Parket's

3    history and characteristics.  His crimes are, no doubt, gravely

4    serious, we understand that completely, and they impacted, even

5    devastated, many people, financially and emotionally.  He has

6    never disputed that and he feels deep remorse for causing such

7    lasting severe pain to so many people including people he cares

8    about extremely deeply.  But his crimes must be looked at in

9    the context of his whole life.  Like all of us, he is more than

10   the worst wrongs he has ever committed.  Although the crimes

11   lasted several years, it was for Mr. Parket an aberration in

12   his whole life.  For the first 55 years of his life Mr. Parket

13   abided by every law and rule.  He was a pillar of integrity for

14   his friends and family, and the Court can see that in the

15   letters that were submitted in support of his sentencing

16   application.  In this regard, it is especially noteworthy that

17   a victim of Mr. Parket's crimes wrote a letter of support --

18   Victim 11 -- and who spoke here to your Honor today.  This was

19   Exhibit 5 to our submission.  In his letter, and today, he

20   described his friendship with Mr. Parket and the ways in which

21   Mr. Parket showed unyielding support for him during very hard

22   times.  Even though Mr. Parket defrauded this victim out of a

23   substantial amount of money, I think what for any person would

24   be a substantial amount of money, he still sees the good in

25   Mr. Parket and the value of his work in attempting to fulfill

O1B5parS

1   his restitution obligation.  We only ask the Court do the same

2   here, to view Mr. Parket and his life as a whole and with an

3   emphasis on his whistle-blower work and post-offense conduct

4   and to impose a sentence that permits him to make his wrongs as

5   right as he can by paying back every penny that is owed.  For

6   these reasons, and the many others raised in our submission, we

7   ask the Court to impose a sentence of time-served with a term

8   of supervision and a substantial term of home detention.

9            THE COURT:  Thank you.

10           MS. RAHDERT:  If I may note one additional point, your

11  Honor?

12           THE COURT:  Sure.

13           MS. RAHDERT:  I know your Honor said that the Court,

14  of course, read in detail the written victim impact statements.

15           THE COURT:  I have also read all the submissions made

16  by everybody including all the statements made on behalf of

17  Mr. Parket.

18           MS. RAHDERT:  Of course, your Honor.  And Mr. Parket,

19  I cannot stress this enough, deeply regrets all of the harm

20  that he caused and the real devastation that is reflected in

21  those statements.  That said, there are a couple of points on

22  which there are facts where the victims are mistaken, and I

23  just wanted to note those so that the record is clear in terms

24  of Mr. Parket's life so the Court has all the accurate

25  information.

O1B5parS

1          The one I want to highlight actually here, it is only

2     one, where in Victims 1's statement Mr. Parket, as I mentioned,

3     did not live a life of luxury after his offense conduct here

4     and after his confession.  He lived on just a few dollars a

5     day.  His inexpensive housing was funded by his son and he took

6     public transportation and otherwise lived a very frugal

7     lifestyle as he has been building these whistle-blower cases.

8          I just wanted to make sure that was clear to the

9     Court.

10          THE COURT:  I didn't understand the statement by the

11     victim to be saying that after his fraud was revealed he lived

12     a life of luxury.  I understood it to be saying that the victim

13     believes that Mr. Parket engaged in the fraud that he engaged

14     in in order to continue living what was then a very comfortable

15     life.

16          MS. RAHDERT:  Understood, your Honor.  I'm sorry if it

17     was unclear.  I wanted to make sure that that was clear for the

18     record.

19          THE COURT:  Thank you.

20          MS. RAHDERT:  Thank you.

21          THE COURT:  Mr. Parket, at this time, if you wish, the

22     Court is happy to hear from you.  You are not obligated to

23     address the Court but you certainly have the right and I am

24     certainly open to hearing anything you might want to say to me.

25          THE DEFENDANT:  I appreciate it, your Honor.  I have a

O1B5parS

few things that I would like to say, both to the Court and to
the people that are here that I have hurt.

THE COURT:  Sure.

THE DEFENDANT:  Listening to everything that everybody
said today, your Honor, the sentiments that each person has
said, the sentiments that were made by people in the victim
impact letters, I have done horrible things, I have hurt people
terribly.  And not talking financially, I am talking
emotionally also.

I can never make up for everything that I have done
but I would like each person to know how sorry I am that I
lied.  I lied, I deceived my family, deceived friends, and
deceived people that I barely knew.  I can never make right the
emotional pain that I have caused everyone, but I will repay
each person what they are owed.  It is my responsibility and it
is my only mission left in life.

I know, I knew and I continue to know right from
wrong.  In the spring of 2018 I recklessly lost my life
savings.  There is no excuse for my actions.  For years I lied
to people and I falsified documents so that people would lend
me money.  Even if I had repaid everyone, what I did was still
horribly, horribly wrong.  Two years later, after speaking to
therapists and a psychiatrist five times each week, I still do
not know how, after leading a proper life for 55 years, I
became a criminal.

O1B5parS

1          In November of 2021, I hit rock bottom.  I could not

2    lie to anyone anymore.  I attempted to commit suicide.  I spent

3    a good deal of time at Gracie Square in their psychiatric ward.

4    I knew I had to make amends to people that I hurt and I asked

5    my lawyer to reach out to the United States Attorney's office

6    so I could admit my wrongdoing.  This was done prior to my

7    being aware of any investigation into me and to my activities.

8          I was interviewed twice by the SDNY and I confessed to

9    all of my crimes.  I provided them with the names of victims

10   that they were unaware of, and I gave them detailed

11   spreadsheets of what I stole.  In pleading guilty, my primary

12   motivation was to atone for my crimes and to make sure that my

13   victims are being repaid first before anything goes to the

14   government.  I have been assured that it is the policy of SDNY

15   that any money that I earn will go to the victims before the

16   government gets anything for itself.

17          Repaying people seemed like an impossible task until I

18   learned about the Securities and Exchange Commission

19   whistle-blower program in December of 2021.  I found a purpose,

20   I found a reason to live, it was a vehicle to begin atoning for

21   all of my sins.

22          Earning the money to repay each person in principal

23   and interest does not excuse my actions in any way but it is

24   just a first step forward.  Accomplishing this is my goal in

25   life.  On average, I spend at least 16 to 18 hours each day,

O1B5parS

each and every day of the week, working on these whistle-blower
activities.  I am speaking about them today so the victims have
some information about my efforts to repay them.  I had
actually asked, when I asked my other attorney to reach out to
the victim, it was solely because I had wanted, for the last
two years, to let people know what I am doing to try to take
steps forward to repay them.  It was not done to influence
anybody in any way, it was done purely to inform.

The cases that I have put together from independent
research identify more than $12 billion in wrongdoing.  I
identified and documented significant crimes in securities
markets.  In 2023, I participated in 21 formal interviews and
informal discussions with the SEC and federal prosecutors at
EDNY.  I allege that more than 70 times, hedge funds illegally
shorted stocks in advance of a securities offering and more
than 100 times issuers of hedge funds filed either falsified
documents, contradictory documents, or just plain failed to
make required filings to the SEC.  Accounting firms negligently
approved inappropriate implied volatility assumptions in
audited financial statements which resulted in false and
misleading income statements for public companies.  I am also
pursuing a civil matter against a hedge fund for a securities
law claim that is covered by strict liability.

The information I provided was previously unknown to
the EDNY and the SEC.  These agencies have opened formal

O1B5parS

investigations into four of the five cases that I filed.  In just the past three years, seven investment banks improperly collected more than $950 million in fees.  Nine hedge funds, ranging from $200 million to more than $25 billion in assets under management, improperly earned more than $3 billion dollars.  400 corporate issuers violated securities laws by improperly raising more than $14 billion dollars in new capital.  Investors lost more than $12 million in transactions. Regulators have demonstrated an interest in my allegations against many of these parties.  Successfully repaying victims is not reliant on any one prosecution or regulatory lawsuit. Even a small number of convictions or settlements would enable me to repay each person.

For me to succeed in completing this mission to repay my victims, I still have a tremendous amount of work left to do.  I have requested a punishment of home confinement so I will be repay each victim of my crime.  The Bureau of Prisons has told me that if I were incarcerated, that I will be unable to scour the SEC's website, I will be unable to prepare supplemental submissions and construct spreadsheets and provide the SEC with additional information each time they charge another person that I have identified.

The SEC expects a whistle-blower, whose submissions on based on independent analysis, to proactively and continue to provide new information to them to use in order to earn the

O1B5parS

1    maximum percentage payout.  Even with a short sentence, the

2    statute of limitations will expire on many of my claims before

3    I can resume my work.  In some instances, they expire this

4    year.  If I am permitted to keep working, I believe certain

5    facets of my allegations will be resolved and will be able to

6    repay the victims starting in 2024.

7            Since February 17, 2022, I have filed five separate

8    whistle-blower complaints and 29 supplemental submissions with

9    the SEC.  I am also pursuing a separate civil matter.  The

10   submissions encompassed more than 850 pages and an additional

11   125 Excel spreadsheets.  The 34 submissions are substantiated

12   by more than 4,000 documents.  This is material has been

13   reviewed, edited, and verified by the attorneys who represent

14   me.

15           The SEC interviewed me in September after I documented

16   in 11 submissions that a hedge fund, with more than $20 billion

17   assets under management, acted as an unregistered broker-dealer

18   and illegally distributed hundreds of millions of shares on

19   behalf of an issuer.  The proceeds were then used to repay

20   other investors.  At its core, this was a $4 billion Ponzi

21   scheme.  I uncovered and provided evidence to the SEC that this

22   issuer and their law firm, one of the largest and most

23   prestigious in the country, recklessly lied by misstating

24   significant facts.  This evidence included documents showing

25   that the chief financial officer and the general counsel each

O1B5parS

made contradictory statements under oath to the SEC and under

penalty of perjury to the bankruptcy court.  I have previously

you with a supplemental submission focused on this matter.

Last year, the SEC charged a hedge fund, central to my

allegations, with violations of fraud, misrepresentation,

Reg SHO, and other violative trading.  I provided the SEC with

additional information about the hedge fund's violation of

Rule 105 of regulation M and insider trading.  I have had

multiple discussions with the SEC about this fund and expect

that I will be eligible for a reward when the case is resolved.

At least seven parties named in my complaints have

already been charged by the SEC, four of those under my

specific theories.  For the others, it is a proof of concept

that these parties may be violating SEC regulations.  If any

victims would like additional information, I encourage them to

reach out to my counsel.

Your Honor, if you would like specific details as to

the alleged crimes I have uncovered, the effort to review all

of my submissions, the names of the underwriters, the issuers,

the hedge funds, the law firms, and the Exchange who have

violated civil and criminal losses, as well as the particulars

of my interviews with the SEC and EDNY, I will answer any

questions you might have.

If I am incarcerated there is no guarantee that the

SEC will continue to focus on my allegations.  I will almost

O1B5parS

certainly receive a smaller percentage payout by the SEC for my

whistle-blower award because I will not be able to provide the

same level of assistance to the SEC in jail.  This will reduce

or eliminate my ability to repay victims.  The SEC expects a

whistle-blower, whose submissions are based on independent

analysis, to proactively and continuously provide new

information for them to use and to earn the maximum payout.

The SEC has repeatedly asked me for additional information on

topics discussed during interviews.  I need these cases to

remain a priority at the SEC.

Qualifying for a whistle-blower award a process.  The

SEC views my work as significant.  They are investigating

submissions and have acknowledged the information is unique and

was previously not known to them.  They have conducted many

interviews of me and said it is likely they will want to

interview me further.

I am painfully aware that my acts have devastated many

victims, both financially and emotionally.  I have also

shattered family relationships.  My wife divorced me, two of my

three sons have not spoken with me in more than two years.

There are very few people that still speak with me.

Your Honor, I am not looking to escape accountability

for my crimes because of my efforts to repay each person I have

hurt.  I understand that a sentence of incarceration is

deserved in light of my crimes.  I wish there was a facility

O1B5parS

where I could be incarcerated and still continue doing the work

necessary to repay people.  Alternatively, I wish you could

sentence me to home confinement so I could repay each person

and then impose the incarceration I deserve.  I am devastated

about the lies that I told.  I have no excuse for anything that

I have done.  I understand that repaying people will not repair

these relationship.

          Today, two years after I filed my first whistle-blower

case, the path to repaying each person is clear and has a high

probability of success if I am allowed to keep working.  I pray

you will sentence me in a way that will make it possible for

the victims to be repaid.

          Thank you very much.

          THE COURT:  Thank you, sir.

          At this time I will describe the sentence that I am

intending to impose and my statement of reasons.  Before

sentence is finally imposed the attorneys will have an

opportunity to make any legal objections to the sentence that I

outline.

          I note at the outset, as I said before, that the

guidelines calculation that's contained in the PSR is

consistent with what the parties stipulated to.  It is also

consistent with my own independent calculation of the

guidelines range so I'm going to run through that relatively

briefly.

O1B5parS

1          I used the November 2023 guidelines manual.  Counts

2    One and Three are grouped together for purposes of the

3    calculation.  The guidelines applicable for the violations at

4    issue here is Section 2B1.1.  Because the fraud offense carries

5    statutory maximum term of 20 years of imprisonment or more, the

6    base offense level is 7.  Because Mr. Parket is responsible for

7    losses of more than $25 million but less than $65 million, 22

8    offense levels are added.  There are also several applicable

9    specific offense characteristics.  Two offense levels have been

10   added because the offense involved 10 or more victims.  An

11   additional two levels are added because the offense involved

12   sophisticated means and Mr. Parket intentionally engaged in or

13   caused the conduct constituting sophisticated means.  An

14   additional two levels are added because the offense involved

15   the possession or use of an authentication feature.  There are

16   no applicable victim-related adjustments or adjustments for

17   role in the offense or for obstruction of justice.  The

18   adjusted offense level is therefore 35, and then I subtracted

19   three offense levels, as I noted earlier, two for acceptance of

20   responsibility and one for timely notice of an intent to enter

21   a plea.  Mr. Parket's resulting total offense level is 32, he

22   has zero criminal history points, putting him in Criminal

23   History Category I.  The guidelines range for Counts One and

24   Three is 121 to 151 months of imprisonment.

25          Now, in addition to the sentencing guidelines I also

O1B5parS

```
1    very carefully considered, as I must, all of the factors that
2    have been set forth by Congress in a statute at 18 United
3    States Code, Section 3553.  A number of you have heard
4    throughout counsel's comments reference to or discussion about
5    the 3553 factors.  That's what we are talking about here and I
6    have carefully and seriously considered and weighed all of
7    these factors.  Those factors include the nature and the
8    circumstance of the offense and the history and characteristics
9    of Mr. Parket, the need for the sentence imposed to reflect the
10   seriousness of the offense, to promote respect for the law, to
11   provide a just punishment for the offense, to afford adequate
12   deterrence to criminal conduct, to protect the public from
13   further crimes by Mr. Parket, to provide Mr. Parket with needed
14   educational/vocational training, any medical care or other
15   correctional treatment, in the most effective manner.  I am
16   also instructed, as I said I have, to consider the sentencing
17   guidelines that we have been talking about as well as the
18   policy statements that are issued by the Sentencing Commission
19   that promulgates these guidelines which are ultimately adopted
20   into law by Congress.  There is also a need to avoid
21   unwarranted disparities in sentencings among similarly situated
22   defendants and to provide restitution to the victims of
23   Mr. Parket's crimes.
24           I have carefully weighed all of these factors and I
25   have given substantial thought to what is an appropriate
```

O1B5parS

sentence in this case.  I have concluded that a sentence, a
guidelines range sentence is appropriate in this case.  I
simply cannot, weighing all of those factors, sentence
Mr. Parket to time-served.  And, frankly, I don't think it was
a reasonable request to have been made in light of the record
before me.  I will outline several of the factors that lead me
to that conclusion.  I begin with the seriousness of the
offense.

Mr. Parket, over the course of approximately five
years, you participated in a complex, extensive, sophisticated,
elaborate fraud scheme that spanned five different states.  To
perpetuate that fraud you fabricated hundreds of pages of
elaborate paperwork and you impersonated other real people.
You went to great lengths to perpetrate this fraud.  You built
lie upon lie and you deceived countless people.  In doing so,
you drew on your extensive experience and connections in the
finance world to construct an intricate years' long fraud.
That fraud, your crimes, were cold, they were senseless, they
were manipulative, and they were calculating.

In committing your offenses you harmed and destroyed
the lives of many, many people.  I have listened to several of
those people who spoke to me today and I have read very
carefully the very impactful statements by people who didn't
come and talk today.  All of those people took time out of
their busy lives to address the Court, either in writing or in

O1B5parS

1  person, and they spoke to the harm and the pain that your

2  actions have put them through.  I have read all of those victim

3  impact statements and I have read all of the letters that were

4  submitted on your behalf as well.

5        It's appalling to the Court that several of the people

6  of whom you took advantage were your own family members, your

7  friends, your colleagues.  You capitalized on your relationship

8  with these people, the trust they placed in you, the love they

9  had for you.  This includes three of your sons and your

10  stepmother.  You knowingly abused their love and trust of some

11  of the most important people in your life.  Ultimately, your

12  criminal activity will have significant and lasting

13  consequences for every single person you have injured and that

14  counsels in favor of a serious sentence as just punishment.

15        I have looked very carefully at your history and your

16  personal characteristics.  By all indications, you had a very

17  happy, stable childhood and a loving family life.  You were

18  never exposed to any form of abuse, poverty, violence,

19  maltreatment, substance abuse.  You lived a quite comfortable,

20  if not a wealthier lifestyle.  By your own account, your best

21  childhood memories were spent with your loving parents.  Prior

22  to your criminal conduct, you were in a long, stable, and happy

23  marriage and your three sons clearly loved, adored, and looked

24  up to you.

25        I read your many letters of support.  I recognize the

O1B5parS

charitable work that you have done both before and after your

crimes came to light.

          Your strong ties to your family and your friends, your

stable upbringing, all of those things make your conduct all

the more troubling.  You are extremely well educated, you

possess multiple higher education degrees.  You have had

extensive employment experience in the financial sector working

as the manager for various hedge funds, an independent stock

trader, a senior executive vice president of a financial

institution, among others.

          I understand there came a point that you incurred or

suffered some serious personal hardships.  Specifically, I am

referencing your wife's illness and the death of your father.

Those types of hardships are suffered by many, many people.  In

fact, all of us or most of us, ultimately endure the loss of

parents.  You say thereafter and as a result you incurred

significant financial losses.  Again, many, many people face

serious financial difficulties.  But, instead of leveraging

your extensive knowledge, your intellect, your experience to

get yourself back on your feet, instead of using your God-given

talents and skills as you are now trying to do in connection

with the whistle-blower cases to get out of the bad financial

predicament you got yourself into, you used your knowledge to

harm and deceive others and, as you just told me, you knew what

you were doing was wrong.  Your conduct does not appear to the

O1B5parS

Court to appear to have been driven by a failed support system, poverty, or lack of education.  Your actions were driven by nothing but greed.

I must consider and I have considered the need for both specific and general deterrence.  I do recognize that you have no criminal history, but I cannot agree that age or lack of prior criminal history nullifies or even minimizes the need for specific deterrence in this case.  Frankly, the only relationship that your age has in terms of my weighing an appropriate sentence here is that by the time you committed the conduct at issue here, you had built up substantial knowledge and expertise and you used that knowledge and expertise to engage in serious criminal conduct.

You argue that your lack of criminal history makes this crime an anomaly, makes it aberrant in an otherwise law-abiding life.  But this was not a one-off incident.  As I said earlier, you perpetrated this fraud over the course of close to five years and you devoted enormous amounts of time and energy to keep it running and to keep it hidden.  That conduct warrants just punishment.

There is also a serious need for general deterrence in these circumstances.  I have an obligation to send a message that this country does not tolerate this kind of fraudulent and abusive behavior.  I have an obligation to promote respect for the law.

O1B5parS

1          Now, your lawyer talked to me about the fact that I

2    should send a message that self-reporting one's misconduct will

3    be rewarded.  The more important message for me to send is that

4    people shouldn't engage in this type of conduct in the first

5    place.

6          I am also mindful, and I credit defense counsel's

7    arguments, pertaining to the loss amount under the tables and

8    sentencing guidelines which resulted in the 22-level increase

9    in your offense level.  I have carefully considered that

10   argument and I do acknowledge that the Second Circuit has

11   recognized that in some circumstances there can be a

12   disproportionate impact from the loss amount enhancement.  I

13   have weighed that consideration but I note here that the harm

14   that you have done is not simply the dollar amount of loss that

15   you have caused.  You destroyed people's lives.  You caused

16   devastating harm, emotionally and mentally, to the health and

17   well-being of your victims, to their sense of stability, their

18   sense of trust, to their peace of mind, and that loss cannot be

19   calculated and needs to be weighed, as well, in terms of an

20   appropriate sentence.

21          Now, I acknowledge that you have repeatedly expressed

22   remorse for your conduct.  I recognize that you proffered with

23   the government, that you confessed to your wrong, but you did

24   that only at a time when your wrong was already beginning to

25   unravel, whether you knew that or not.

O1B5parS

1        I acknowledge, as well, the multiple whistle-blower

2   suits that you have filed in an attempt to obtain

3   whistle-blower awards which you want to use towards victim

4   restitution payments.  This is one of the main arguments that

5   your attorney made and, frankly, you made, standing up and

6   arguing to me the merits of the suits that you are involved

7   with.  You both rely on that very heavily in terms of an

8   ability to pay restitution to your victims and you say that

9   depends on your staying out of prison, serving your sentence in

10  the community, so that you can continue to be able to pursue

11  those whistle-blower actions.  I reject that argument in its

12  entirety.  I reject that that's the only way for you to

13  continue to work on those whistle-blower cases.  As I said

14  before, there is internet in prisons, you have attorneys

15  representing you in those cases.  If the SEC needs to speak

16  with you, it will know where to find you.  If appropriate, it

17  can ask to have you temporarily released to meet with them and

18  a judge will weigh whether that's appropriate.  Moreover,

19  although you are hopeful to pay restitution through these

20  suits, there is simply no guarantee and that's what I meant

21  when I said to counsel you cannot represent to these victims

22  that they're going to be repaid because of these whistle-blower

23  suits.  That would be another -- I don't want to call that a

24  fraud, but I also think it is wrong to hold out what may well

25  be a false hope to the victims.  So I want to be clear on the

O1B5parS

1   record that while I am hopeful -- and I accept that Mr. Parket

2   is hopeful that he will be able to compensate, in some respect,

3   through those whistle-blower lawsuits.  Right now that is

4   wholly speculative.  There is absolutely no guarantee.  There

5   is no guarantee the suits will succeed, there is no guarantee

6   the SEC will act on information Mr. Parket is bringing to them.

7   There is no guarantee that he will be given awards as a result

8   of any lawsuits that might be successful.  It is entirely too

9   speculative to say that you should be forgiven any prison time

10  as a result of the tremendous wrong you have done based on

11  these whistle-blower lawsuits.

12          While I commend your efforts to pay restitution to

13  your victims, those efforts do not entitle you to escape

14  accountability for the crimes you have committed.

15          I just want to comment, too, on this notion that in

16  some respect, even though there is no 5K letter, you are a

17  cooperator.  You simply are not within the meaning of the

18  considerations that I'm supposed to weigh here.  Yes, I credit

19  that you are remorseful.  Yes, I credit that you have confessed

20  to your crimes.  But you are not entitled to be treated as a

21  cooperator in this case.

22          Now, your attorney also urges that the consequences of

23  your actions since your arrest have been ample punishment.  I

24  disagree.  Every defendant with far more severe impacts on

25  their life can make that same kind of an argument.  Every

O1B5parS

1   mitigating circumstance that you have provided to the Court

2   speaks to events that occurred after your fraudulent scheme

3   came crumbling down.  Your isolation from your family, your

4   mental health issues for which I am very happy that you have

5   been getting help, apparently meaningful help -- and I will

6   indicate in the judgment that I will enter that you should

7   continue to get that kind of treatment while you are in

8   prison -- your inability to find employment, your pursuit of

9   the whistle-blower cases, all of these are nothing more than

10  direct consequences of your own selfish and criminal conduct.

11          Having said that, I have weighed all of that in

12  fashioning an appropriate sentence.  I have to say that there

13  is no mitigating circumstance that I have heard in our rather

14  lengthy discussion today that can begin to explain your reasons

15  for engaging in this type of really egregious scheme.  While I

16  have no doubt that your arrest has had serious repercussions on

17  your life, these are all inevitable consequences that you and

18  other defendants face when you engage in criminal conduct.

19          So, for all of these reasons, it is the intent of the

20  Court to sentence you to a term of imprisonment of 121 months,

21  to be followed by a term of supervised release on each count of

22  three years, to run concurrently.  During that period of

23  supervised release all of the mandatory and standard conditions

24  set forth in the PSR will be applicable, as will the special

25  conditions that I discussed with you earlier.  The mental

O1B5parS

1   health condition is warranted in light of the struggles that

2   you have had.  The search condition is justified by the

3   fraudulent nature of your offense.  And the financial

4   conditions are warranted in order to monitor your finances,

5   including payment of any financial penalties that I am going to

6   impose and to prevent any additional fraud.

7        In addition, the PSR did not indicate but you will be

8   supervised during that period of supervised release by the

9   district in which you are residing.

10       There is a $100 mandatory special assessment for each

11  count.  There are two counts to which you pled so there is a

12  $200 mandatory special assessment, payable immediately.

13       Now, Section 5E1.2 says that the Court shall impose a

14  fine unless you establish that you are unable to pay.  I do

15  find, based on the record before me and the hefty restitution

16  and forfeiture obligations, coupled with all the other

17  financial information including the debts that you have and the

18  fact that your son has basically been supporting you, that you

19  do not have the ability to pay a fine so I don't intend to

20  impose a fine.

21       With respect to restitution, I will enter the consent

22  order of restitution obligating you to pay restitution in the

23  amount of $37,643,842.90.  With respect to forfeiture, the

24  order of forfeiture, together with the subsequent stipulation

25  and order that I entered, it is final as of this date.  I am

O1B5parS

1   incorporating that in the sentence that I am imposing and it

2   will be incorporated into the judgment in this case.

3           So, at this time I will pause, as I said I would do,

4   to give counsel the opportunity to lodge any legal objections

5   to the sentence that I have outlined.  Does the government have

6   any objections that you wish to make?

7           MS. CHONG:  No, your Honor.

8           THE COURT:  Does the defense wish to make any legal

9   objections to the sentence?

10          MS. RAHDERT:  No legal objections, your Honor.

11          THE COURT:  Mr. Parket, would you please stand?  Sir,

12  it is the judgment of the Court that you be remanded to the

13  custody of the Bureau of Prisons to serve a term of

14  incarceration of 121 months.  That will be followed by a term

15  of supervised release of three years on each of the two counts,

16  to run concurrently, and during that time the mandatory

17  standard and special conditions of supervised release that we

18  have been discussing will be imposed.

19          There is a mandatory $100 special assessment on each

20  count so you are responsible, immediately, to pay a $200

21  mandatory special assessment.

22          The Court is not imposing a fine.

23          The restitution order that we have discussed will be

24  part of the judgment and the Court will adopt the proposed

25  payment schedule that was set forth in the PSR.

O1B5parS

1          The order of forfeiture that's on the docket at

2     ECF no. 39 is imposed as part of your sentence and that

3     forfeiture order is, as I say, part of your sentence and will

4     be incorporated into the judgment in this matter.

5          You may be seated.

6          I should note, Mr. Parket has been on release

7     throughout the life of this case.  I do find, based on the

8     recommendation of probation, that he is a candidate worthy of

9     voluntary surrender so I will include in the judgment that he

10    surrender on April 11 of this year at the facility to be

11    designated by the Bureau of Prisons.  If, for any reason, the

12    Bureau of Prisons hasn't designated by then, you will be in

13    touch with the Court please, counsel, and we will modify that.

14    All right?

15         MS. RAHDERT:  Your Honor, if I may be heard very

16    briefly on designation?

17         THE COURT:  Yes.  I was going to ask you that but go

18    ahead.  Sure.

19         MS. RAHDERT:  Sorry, your Honor.

20         THE COURT:  No, that's all right.

21         MS. RAHDERT:  We respectfully request that the Court

22    recommend to the Bureau of Prisons designation at a facility as

23    close to New York as possible.

24         THE COURT:  To New York City.

25         MS. RAHDERT:  Correct; yes, New York City, excuse me.

O1B5parS

1    And I know your Honor mentioned that mental health treatment

2    would be part of the Court's judgment, but also noting that a

3    facility with robust mental health treatment could be the

4    recommended designation as well.

5            THE COURT:  I will include both of those in the

6    judgment.

7            MS. RAHDERT:  Thank you very much.

8            THE COURT:  Is there a motion by the government to

9    dismiss any open counts?

10           MS. CHONG:  Yes, your Honor.  The government moves to

11   dismiss the two open counts.

12           THE COURT:  That motion is granted and that will be

13   reflected in the judgment as well.

14           Now, Mr. Parket, I should tell you that to the extent

15   you haven't waived it in the plea agreement that you entered

16   into with the government, you do have a right to appeal from

17   both your conviction and from your sentence.  If you are unable

18   to pay the costs of any appeal, you may apply for leave to

19   appeal in forma pauperis.  Any notice of appeal by you has to

20   be filed within 14 days of entry of the judgment.  Given the

21   late hour today the judgment will not get entered today but it

22   most certainly will be entered tomorrow, so that will start the

23   clock running on any time to appeal.  Do you understand, sir?

24           THE DEFENDANT:  Yes, I do.

25           THE COURT:  Is there anything further for the record?

O1B5parS

1           MS. CHONG:  No, your Honor.

2           THE COURT:  Counsel?

3           MS. RAHDERT:  Nothing further, your Honor.

4           THE COURT:  So all that remains, Mr. Parket, I wish

5     you well.  I hope that you will use the time that you are in

6     prison to try to think about how you can use your many, many

7     gifts and talents to benefit society and first your victims.  I

8     wish you well.

9           I thank our court reporter.

10          With that, we will stand adjourned.  Thank you.

11                              o0o

12

13

14

15

16

17

18

19

20

21

22

23

24

25